**EXHIBIT A**

**Plaintiff's Motion for Sanctions for Fraud on the Court Filed in the Superior Court of
Pickens County, Georgia, including all exhibits attached thereto.**

IN THE SUPERIOR COURT OF PICKENS COUNTY
STATE OF GEORGIA

DAVID JOSEPH CERNANCE,

        Plaintiff,

vs.

CARMAX AUTO SUPERSTORES, INC.,
LETONY "TONY" ROUSE II,

        Defendants.

CIVIL ACTION FILE

NO.: 2025SUCV0721

## PLAINTIFF'S MOTION FOR SANCTIONS FOR FRAUD ON THE COURT

COMES NOW Plaintiff David Joseph Cernance and respectfully moves this Court, pursuant to its inherent authority and applicable Georgia law, for sanctions arising from conduct that has substantially undermined the integrity of the judicial process. In support thereof, Plaintiff respectfully shows the Court as follows:

This Motion arises from a pattern of conduct involving materially inconsistent sworn statements, omission of material facts, post-hoc reconstruction of inspection-related narratives, failure to supplement discovery obligations, and representations made without reasonable inquiry, all concerning a central factual issue in this case: whether an inspection of the Subject Vehicle occurred, who performed it, what records existed concerning that inspection, and what information was communicated to Plaintiff.

Fraud on the court is not established by a single inaccurate statement in isolation, but by a pattern of conduct that prevents the tribunal from evaluating matters on a truthful and reliable factual foundation. The record in this case reflects repeated inconsistencies and unsupported representations concerning the alleged inspection of the Subject Vehicle.

Defendants repeatedly represented that a "full investigation" had been conducted. However, the record reflects substantial questions regarding whether such an investigation occurred in the manner represented.

A full investigation reasonably would have included review of assignment records, technician logs, internal workflow documentation, and interviews of the individuals potentially involved in the alleged inspection. Defendants have produced no assignment records, no technician notes, no contemporaneous inspection reports, and no evidence establishing that either of the two individuals later identified as "possible inspectors" was ever confirmed as having participated in the inspection.

Defendants further identified two individuals during the federal proceedings who "may have" performed the inspection, yet Defendants never supplemented Rule 26 disclosures to identify either individual as a witness with knowledge and never supplemented discovery responses to clarify whether either individual possessed relevant information concerning the alleged inspection. Despite representing that a "full investigation" had occurred, Defendants continued to maintain uncertainty regarding the identity of the inspector and the factual basis of the inspection narrative.

These circumstances substantially undermine the reliability of the representation that a complete investigation had been conducted before those statements were presented to the federal court.

The inconsistency is further illustrated by Defendants' subsequent identification of Tim Arens and Daniell Richardson as technicians who were on shift on the date of the alleged inspection. In the Verification, Defendants represented that the interrogatory responses were not within the personal knowledge of any one person and instead were assembled from records, files, and interviews. Yet Defendants later identified specific individuals who potentially possessed information concerning the inspection at issue. Plaintiff requested clarification concerning whether these individuals performed, participated in, supervised, or otherwise possessed knowledge concerning the alleged inspection. Defendants declined to provide sworn clarification and instead took the position that obtaining such information was a matter for formal discovery. While Defendants were not obligated to obtain declarations on Plaintiff's behalf, the sequence of events nevertheless highlights the unresolved inconsistency between the Verification, the subsequent identification of potential witnesses, and Defendants' continued inability to identify who performed the inspection or the factual basis underlying the inspection narrative. This inconsistency further impaired Plaintiff's ability to evaluate the reliability of Defendants' representations concerning the alleged May 21, 2024 inspection.

## TWO-TECHNICIAN IDENTIFICATION AND FAILURE TO RESOLVE WHICH TECHNICIAN PARTICIPATED

The inconsistency is further highlighted by Defendants' prior identification of Tim Arens and Daniell Richardson as the only technicians associated with the relevant date. During the federal proceedings, Defendants identified those two

technicians as the only individuals connected to the May 21, 2024 date, while expressly declining to represent that either technician performed the inspection.

Rouse now states that he looked at the vehicle with one of the technicians, but does not currently recall which technician it was. Given Defendants' prior representation that only two technicians were associated with the relevant date, the continued inability to identify which technician allegedly participated in the inspection is inconsistent with the level of detail contained in the Salesforce notes and with Defendants' reliance upon the alleged inspection as a factual basis in this litigation. This unresolved contradiction further undermines the reliability of Defendants' inspection narrative.

Defendants also failed to supplement their disclosures and discovery responses after identifying Tim Arens and Daniell Richardson to the United States District Court as the only individuals associated with the date of the alleged May 21, 2024 inspection. Prior to that disclosure, Defendants had consistently maintained that they could not identify the individual who performed the inspection. Once Defendants identified specific individuals associated with the relevant date through their investigation, that information was never formally incorporated into Defendants' Rule 26 disclosures or supplemented discovery responses. Defendants instead continued to rely upon disclosures and responses that did not identify either individual as a person possessing potentially relevant knowledge concerning the inspection. This omission is significant because Defendants represented in their Verification that the discovery responses were assembled from "records, files, and interviews" conducted as part of Defendants' investigation. If the investigation yielded information sufficient to identify specific individuals associated with the inspection date, substantial questions arise concerning why Defendants disclosed that information to the Court but did not

formally supplement their disclosures and discovery responses to reflect information obtained during the investigation. The resulting inconsistency further contributed to the incomplete and shifting factual record concerning the alleged inspection.

## POST-HOC RECONSTRUCTION OF THE INSPECTION NARRATIVE

The record further reflects evidence of post-hoc reconstruction of the inspection narrative. Defendant's internally produced Salesforce notes contain the first documented appearance of the assertion that "senior management" inspected the undercarriage of the Subject Vehicle only after Plaintiff escalated the matter to corporate personnel in September 2025.

No contemporaneous inspection report, technician notes, photographs, or identified inspector have been produced concerning the alleged May 21, 2024 inspection. The appearance of a detailed inspection narrative only after escalation and litigation-related activity raises substantial questions regarding whether the narrative was reconstructed after the fact rather than documented contemporaneously.

The September 19, 2025 Salesforce chronology also contains substantial redactions. Plaintiff does not speculate concerning the contents of the redacted material; however, the redactions prevent Plaintiff from determining whether additional information exists concerning the alleged May 21, 2024 inspection, the individuals involved, or the basis for the inspection narrative reflected elsewhere in Defendants' records.

Additional questions arise from the level of detail contained within Defendants' internal Salesforce records. Those records state that senior

management inspected the vehicle's undercarriage on May 21, 2024, that the vehicle was placed on a lift, that the undercarriage and subframe were evaluated, and that the rust condition was determined to be cosmetic in nature.

These entries contain specific factual assertions concerning both the performance and substance of the alleged inspection. Yet Defendants later represented to Judge Jones that they could not identify the individual who performed that inspection and did not know who conducted the evaluation described within their own records.

Plaintiff does not contend that either representation must necessarily be false. However, the coexistence of detailed inspection findings attributed to an unidentified inspection event raises substantial questions concerning the source of the information recorded in Defendants' business records, the basis upon which those conclusions were documented, and the identity of the individual or individuals who supplied that information. These questions are particularly significant because the same factual narrative was subsequently repeated in Defendants' communications concerning Plaintiff's complaint and relied upon in defending this action.

## SALESFORCE RECORDS AND THE SOURCE OF THE INSPECTION NARRATIVE

Rouse's sworn discovery responses also sharpen the unresolved questions concerning the Salesforce inspection narrative. Rouse admits that he created, contributed to, reviewed, or approved Salesforce Case Notes relating to the Subject Vehicle. Those records contain specific factual assertions that the vehicle was placed on a lift, that the undercarriage and frame were evaluated, and that the rust condition was determined to be cosmetic.

At the same time, Defendants have not identified the technician allegedly involved, have not produced contemporaneous inspection documentation, and have not clearly identified the source of the information used to create the Salesforce inspection narrative. The coexistence of detailed inspection findings in Salesforce with the absence of an identified inspector, identified technician, contemporaneous inspection report, technician notes, photographs, assignment records, or workflow documentation raises substantial questions concerning whether the Salesforce narrative was reconstructed after the fact rather than documented contemporaneously.

The absence of any contemporaneous documentation for the alleged May 21, 2024 inspection becomes even more significant when contrasted with the extensive and detailed records CarMax produced for every other inspection, evaluation, or service event involving the Subject Vehicle. CarMax's own business records—spanning acquisition, CQI, FQC, mechanical, cosmetic, transfer, and photo-taking activities—demonstrate that inspection-related events are consistently logged through repair orders, technician assignments, timestamps, workflow entries, and internal notes. Yet the only inspections for which no such records exist are the very inspections CarMax now claims support its narrative: the acquisition inspection, the pre-sale inspection, and the alleged May 21 rust inspection. Even if Defendants' assertion that certain records were lost due to a retention policy were accepted, such a policy would not—and could not—erase the existence of an inspection from CarMax's operational systems.

## INCONSISTENCIES BETWEEN THE ROUSE DECLARATION AND THE VERIFICATION

Defendants have also presented materially inconsistent accounts across multiple forums, including sworn declarations, verified pleadings, internal records,

statements to third parties, and representations made during the federal proceedings. These inconsistencies concern the same central factual issue and remain unresolved.

In his December 22, 2025 Declaration submitted during the federal proceedings, Mr. Rouse stated under penalty of perjury that his statements were based upon his "personal knowledge" and his "review of the business records of CarMax." However, in the later Verification executed on February 13, 2026, Defendant represented that the interrogatory facts "are not within the personal knowledge of any one person at CarMax" and instead were assembled from records, files, and interviews.

This contradiction cannot be reconciled. In his December 22, 2025 Declaration, Mr. Rouse expressly states that his statements are based upon his personal knowledge and his review of the business records of CarMax. Yet in the February 13, 2026 Verification, Defendants represent that the interrogatory responses "are not within the personal knowledge of any one person at CarMax" and instead were assembled from "records, files, and interviews." These two sworn positions cannot simultaneously be true. If Mr. Rouse possessed personal knowledge and reviewed business records sufficient to support the statements in his Declaration, then the Verification's assertion that no single person possesses such knowledge is inaccurate. Conversely, if the Verification is accurate that no one person has personal knowledge of the facts, then Mr. Rouse's Declaration necessarily overstated both his personal knowledge and the existence of records he claims to have reviewed. The inconsistency is further magnified by Defendants' later representations that no inspection records exist or are available. If no records exist, Mr. Rouse could not have reviewed them; if records did exist, the Verification's assertion that no one person possesses personal knowledge is

materially misleading. This inconsistency strikes at the reliability of both sworn filings and undermines the factual foundation presented to the Court.

## PERSONAL KNOWLEDGE, VERIFICATION, AND ROUSE'S DISCOVERY RESPONSES

The inconsistency between Rouse's Declaration and the February 13, 2026 Verification is further magnified by Rouse's June 12, 2026 discovery responses. In his December 22, 2025 Declaration, Rouse stated that his statements were based upon his personal knowledge and his review of CarMax business records. In the February 13, 2026 Verification, Defendants represented that the facts stated in the interrogatory responses were not within the personal knowledge of any one person at CarMax and were instead assembled from records, files, and interviews.

Rouse's June 12, 2026 responses now state that he personally looked at the vehicle, looked at the undercarriage and frame, communicated findings to Plaintiff, and relied on his own personal knowledge concerning the alleged May 21, 2024 inspection. These sworn positions are difficult to reconcile. If Rouse possessed personal knowledge sufficient to describe the evaluation, communicate findings, and rely upon his own knowledge concerning the inspection date, then the Verification's assertion that no one person possessed personal knowledge is materially called into question. Conversely, if the Verification is accurate, then Rouse's Declaration and discovery responses raise substantial questions concerning the extent of his personal knowledge and the records he claims to have reviewed.

The inconsistency is compounded by Defendant's discovery positions asserting that contemporaneous inspection reports, technician notes, photographs, and related inspection documentation do not exist or cannot presently be identified

concerning the alleged May 21, 2024 inspection. If contemporaneous inspection documentation no longer exists or cannot be identified, substantial questions arise concerning what business records formed the basis for the inspection-related conclusions later communicated internally, communicated to Plaintiff, and presented to third parties.

Defendants nevertheless represented to the Better Business Bureau that the vehicle was inspected on May 21, 2024 and that the rust condition was determined to be "cosmetic in nature." (See Ex. H). At the same time, Defendants have alternately asserted that "senior management" performed the inspection, that no individual possesses complete personal knowledge concerning the inspection, and that two employees "may have" performed the inspection.

These shifting and unreconciled representations substantially impaired Plaintiff's ability to evaluate the factual basis of Defendants' position and prevented evaluation of the matter upon a complete and reliable factual record.

## COUNSEL'S REPRESENTATIONS TO THE COURT CANNOT BE RECONCILED WITH DEFENDANTS' OWN RECORDS

Plaintiff respectfully submits that the representations made to the Court regarding the alleged May 21, 2024 inspection cannot be reconciled with Defendants' own internal records, external statements, and sworn filings.

During proceedings before the United States District Court, Defendants, through counsel, Sean E. Boyd, repeatedly represented that they were unable to identify the individual who performed the alleged May 21, 2024 inspection of Plaintiff's vehicle. Defendants further represented that no inspection report existed, that no employee could be identified as having performed or witnessed the inspection, and that the only individuals Defendants could associate with that date

were technicians Tim Arens and Daniell Richardson, while expressly declining to represent that either technician actually performed the inspection. These representations are difficult to reconcile with Defendants' own records.

Defendants produced internal Salesforce case notes stating that "senior management" inspected the undercarriage of Plaintiff's vehicle during an appointment associated with May 2024. The record does not attribute the inspection to an unknown technician or to either of the two technicians later identified by counsel.

Rather, the record attributes the inspection to a specific category of personnel—senior management. That category was not an unidentified technician, but rather 'senior management' as reflected in Defendants' own internal records.

Moreover, CarMax's internal records attributing the inspection to "senior management" are consistent with Plaintiff's own experience, as the inspection results were personally communicated to Plaintiff by Mr. Rouse. CarMax's discovery responses further confirm that Mr. Rouse is the only identified individual associated with communicating the May 2024 inspection findings to Plaintiff, while Defendants have simultaneously maintained that they are unable to identify the individual who performed or possessed knowledge concerning the inspection. Mr. Rouse also executed the February 13, 2026 Verification on behalf of CarMax in his capacity as Operations Manager. Defendants have identified no other senior management personnel associated with the alleged inspection and have identified no other individual who communicated inspection findings to Plaintiff. Under these circumstances, Defendants' continued position that the individual who performed or possessed knowledge concerning the inspection cannot be identified is difficult to reconcile with their own internal records,

organizational structure, discovery responses, and course of conduct concerning the inspection at issue.

At a minimum, the record demonstrates that Defendants possessed information identifying a category of personnel allegedly responsible for the inspection.

Likewise, before litigation commenced, Defendants represented to the Better Business Bureau that the vehicle was inspected on May 21, 2024 and that the rust condition was determined to be cosmetic in nature. (See Ex. H). The BBB response reflects that Defendants possessed sufficient information to identify a specific inspection date and communicate alleged inspection findings despite later representations that the identity of the inspector could not be determined.

Thus, Defendants' own records and external statements reflect that:

• an inspection allegedly occurred on a specific date;

• findings allegedly were made regarding the condition of the rust;

• the inspection was attributed internally to senior management rather than to an unidentified technician.

Yet Defendants represented to the Court that:

• they could not identify the inspector;

• no inspection report existed;

• no employee could be identified as having performed the inspection;

• the only individuals they could associate with the date were two technicians whom Defendants declined to identify as the inspector.

These positions cannot readily be reconciled.

The inconsistency is further amplified by Defendants' sworn Verification, which states that Defendants' discovery responses were assembled through a review of "records, files, and interviews" conducted as part of Defendants' investigation. If such an investigation occurred, substantial questions arise as to how Defendants could simultaneously maintain internal records attributing the inspection to senior management, represent to the Better Business Bureau that the inspection occurred and produced findings, yet represent to the Court that the identity of the inspector could not be determined.

The foregoing inconsistencies are further highlighted by representations made to the United States District Court concerning the identity of the alleged inspector. Specifically, Defendants represented to Judge Steve C. Jones that CarMax "did not know" who performed the alleged May 21, 2024 inspection and could not identify that individual despite conducting an internal investigation. See Feb. 24, 2026 Tr. 3–4; Mar. 26, 2026 Tr. 3–4 ("as an officer of the Court, he did not know who that person was"). Those representations cannot be reconciled with CarMax's own internal business records, which expressly state that "senior management inspected the undercarriage on 5/21/24" and describe the undercarriage evaluation and rust determination performed on that date. See Salesforce Records, CARMAX 088–089. Nor can they be reconciled with CarMax's later discovery admissions identifying Letony "Tony" Rouse II as having knowledge of the May 2024 evaluation and acknowledging that he communicated with the technicians working that day.

## PLAINTIFF'S EFFORTS TO IDENTIFY THE INSPECTOR AND THE UNRESOLVED MOTION TO COMPEL

The record further demonstrates that Plaintiff sought clarification concerning the identity of the individual associated with the alleged May 21, 2024 inspection long before the federal proceedings concluded. On January 20, 2026, Plaintiff requested the deposition of "the CarMax employee who performed, supervised, or is designated to testify regarding the alleged May 21, 2024 inspection" and requested production of inspection-related records, including inspection checklists, technician notes, photographs, technician assignment logs, work orders, and communications concerning the inspection. When no inspector was identified and no responsive records were produced, Plaintiff subsequently filed a Motion to Compel advising the United States District Court that "the identity of the inspector and the person responsible for the post-sale inspection remains unknown" and seeking records necessary to determine who performed the inspection and what qualifications that individual possessed. Defendants opposed Plaintiff's efforts to obtain this information, asserted procedural objections concerning compliance with the Court's standing procedures, and sought attorney's fees and sanctions against Plaintiff rather than providing the requested clarification. Defendants likewise maintained that any additional effort required to obtain information concerning the individuals associated with the alleged inspection was a "necessary byproduct of electing to engage in litigation."

Despite these positions, the underlying issue remained unresolved, and Defendants subsequently represented during the February 24, 2026 and March 26, 2026 proceedings that they could not identify the individual who performed the inspection. The Motion to Compel was never adjudicated on the merits because the federal proceedings were remanded before the motion could be resolved. Accordingly, no court ever determined that Plaintiff's requests were improper or that the information sought was irrelevant. Instead, the unresolved issues raised in

Plaintiff's January 20 request and subsequent Motion to Compel remained at the center of the federal proceedings and are directly related to the inconsistencies presently before this Court concerning the alleged inspection, the identity of the inspector, and the records purportedly supporting Defendants' inspection narrative.

During the February 24, 2026 discovery conference, Defendants renewed a request for attorney's fees and costs arising from Plaintiff's earlier Motion to Compel. Plaintiff explained that he was unaware of the procedural requirement contained within the Court's standing order and that he complied once the requirement became known to him. Judge Jones noted that the Court does not provide the standing order to pro se litigants in the same manner that it is provided to attorneys and further observed that Plaintiff may not have known of the requirement.

The Court did not determine that Plaintiff acted in bad faith, did not find that Plaintiff's discovery requests were improper, and did not adjudicate the merits of the Motion to Compel. Thereafter, the inspector-identification issue remained unresolved throughout the federal proceedings. Plaintiff was later permitted to perfect the record concerning the disputed issues, and the Motion to Compel was never decided on the merits before the case was remanded to state court. Accordingly, no court has ever determined that Plaintiff's efforts to obtain the identity of the individual associated with the alleged May 21, 2024 inspection or the related inspection records were improper or outside the scope of permissible discovery.

Taken together, these facts demonstrate that CarMax possessed internal information identifying "senior management" as the individual associated with the

alleged inspection, yet counsel represented to Judge Jones that CarMax could not identify the person who performed that inspection.

## ROUSE'S DISCOVERY ADMISSIONS REGARDING SENIOR MANAGEMENT

Defendant Rouse's June 12, 2026 discovery responses further narrow the unresolved issue concerning the identity of the individual associated with the alleged May 21, 2024 inspection. Rouse admits that "senior management" was a term used at CarMax's Roswell Store, that he was a member of senior management in May 2024, and that senior management consisted of himself, Kay Johnson, and Nancy Weinwurm. Rouse further admits that he oversaw the service and operations departments at the Roswell Store during the relevant period.

See Ex. O (Rouse's June 12, 2026 Discovery Responses), confirming that "senior management" consisted of a limited and identifiable group of individuals at the Roswell Store.

These admissions are material because CarMax's Salesforce records attribute the alleged undercarriage inspection to "senior management." Defendants previously represented to the federal court that CarMax could not identify who performed the alleged inspection. Rouse's sworn responses now confirm that the phrase "senior management" did not refer to an unlimited or unknowable category of persons, but to a limited group of identifiable individuals at the Roswell Store.

This substantially undermines Defendants' prior position that the individual associated with the inspection narrative could not be identified.

The contradiction between (1) counsel's representations to the federal court, (2) CarMax's internal business records, and (3) CarMax's subsequent discovery

admissions concerns a central factual issue in the case—namely, the identity of the individual associated with the alleged inspection. Plaintiff respectfully submits that this inconsistency warrants careful scrutiny of the representations made to the federal court during the discovery proceedings and supports the relief requested herein.

**JURISDICTIONAL SIGNIFICANCE OF THE INSPECTOR'S IDENTITY**

The identity of the individual associated with the alleged May 21, 2024 inspection was not merely a factual issue during the federal proceedings. Plaintiff's filings in the United States District Court identified Letony "Tony" Rouse II, a Georgia resident and CarMax Operations Manager, as an individual who communicated inspection findings to Plaintiff and possessed knowledge concerning the events at issue. As a result, the identity of the person who allegedly performed, supervised, or possessed knowledge concerning the inspection carried potential jurisdictional significance during the federal proceedings.

Plaintiff does not ask the Court to infer intent from this circumstance alone. Rather, Plaintiff submits that the jurisdictional significance of the inspector's identity provides important context for evaluating Defendants' repeated representations that the individual who performed the alleged inspection could not be identified. Those representations were made notwithstanding Defendants' internal Salesforce records attributing the inspection to "senior management," Defendants' subsequent identification of Tim Arens and Daniell Richardson as the only technicians associated with the relevant date, and Defendants' later discovery admissions acknowledging Mr. Rouse's knowledge concerning the May 2024 evaluation.

When considered together, these circumstances demonstrate that the identity of the individual associated with the alleged inspection was a matter of substantial importance during the federal proceedings. The continued inability to identify that individual, despite the existence of internal records, interviews, and information obtained through Defendants' investigation, presents an unresolved inconsistency that is materially relevant to the Court's evaluation of the reliability and completeness of Defendants' prior representations.

The unresolved contradictions concerning the identity of the individual associated with the alleged inspection are particularly significant in light of the jurisdictional posture of the federal proceedings. Plaintiff identified Rouse, a Georgia resident, as an individual who communicated inspection findings and possessed knowledge concerning the events at issue. Defendants' repeated representations that the identity of the inspector could not be determined were made while internal records attributed the inspection to "senior management" and while Rouse now admits that he was part of that limited senior-management group.

Plaintiff does not ask the Court to infer intent from jurisdictional consequences alone. Rather, Plaintiff submits that the jurisdictional significance of the inspector's identity provides important context for evaluating the completeness and reliability of Defendants' representations to the federal court. The newly served discovery responses make the unresolved identity issue more material, not less, because they confirm that the "senior management" category was limited, identifiable, and included Rouse himself.

A significant procedural inconsistency arises from Defendants' reliance upon a proposed Protective Order premised upon the anticipated production of confidential documents during discovery and their subsequent representations

concerning the existence and availability of inspection-related records. On February 13, 2026, Defendants verified discovery responses stating that information had been assembled from records, files, and interviews conducted as part of Defendants' investigation. Thereafter, Defendants prepared and circulated a proposed Protective Order of Confidentiality governing documents anticipated to be produced in discovery.

The proposed Protective Order contemplated the production of confidential business records and other materials requiring protection from unrestricted disclosure. At the same time, however, Defendants have maintained that no inspection report, technician notes, repair order, workflow entry, or contemporaneous inspection record can be identified concerning not only the alleged May 21, 2024 inspection, but also the acquisition inspection and pre-sale inspection of the Subject Vehicle. Defendants have further represented that certain records relating to these inspections were unavailable due to applicable retention practices. Yet these inspections form the foundation of Defendants' position that the vehicle was properly inspected before sale and that the rust condition later reported by Plaintiff was not indicative of an undisclosed defect existing at the time of sale. The absence of contemporaneous records concerning all three inspections raises substantial questions regarding what records existed at the time Defendants conducted the investigation described in the Verification, what records were reviewed in formulating Defendants' inspection narrative, and what categories of documents Defendants anticipated producing when seeking judicial protection for confidential materials during discovery.

The issue is further sharpened by Rouse's June 12, 2026 discovery responses, which continue to identify no inspection report, technician notes, photographs, assignment records, workflow entries, or contemporaneous

documentation supporting the alleged May 21, 2024 inspection despite Defendants' repeated representation that a full investigation had been conducted.

Plaintiff does not ask the Court to speculate regarding which representation is accurate. Rather, the sequence raises legitimate questions concerning what records existed at the time Defendants conducted their investigation, what information was reviewed in assembling the verified discovery responses, what categories of documents Defendants anticipated producing under the proposed Protective Order, whether any relevant records existed but later became unavailable, and how Defendants were able to identify Tim Arens and Daniell Richardson as the only technicians associated with May 21, 2024 while continuing to maintain that no inspection report exists and that the identity of the individual who performed the inspection cannot be determined.

These questions are particularly significant because Defendants have repeatedly represented that a "full investigation" was conducted, that their discovery responses were assembled from records, files, and interviews, and that an inspection occurred and produced findings that were communicated to third parties. Defendants also sought judicial protection for documents anticipated to be produced during discovery. Yet Defendants continue to maintain that no contemporaneous inspection documentation can be identified and that the identity of the inspector remains unknown.

## PATTERN OF INCONSISTENT REPRESENTATIONS AND PROGRESSIVE NARROWING OF RELEVANT FACTS

The June 12, 2026 discovery responses of Defendant Letony "Tony" Rouse II do not resolve the inconsistencies previously identified in this motion. Instead, they further narrow the relevant factual universe and expose additional

inconsistencies between Defendants' prior representations, internal business records, sworn filings, and subsequent discovery responses.

At the outset of the federal proceedings, Defendants represented that they could not identify the individual associated with the alleged May 21, 2024 inspection despite conducting an internal inquiry. Defendants further represented that they could identify only two technicians associated with the relevant date and could not determine who performed the inspection. These representations formed a central component of the discovery disputes presented to the United States District Court.

Subsequent discovery has materially narrowed the universe of individuals associated with the inspection narrative. Rouse now admits that he was a member of "senior management" at the Roswell location during the relevant period and identifies the individuals who comprised that group. Rouse further admits that he personally looked at the Subject Vehicle, communicated findings concerning the vehicle, oversaw service and operations functions, and participated in, reviewed, contributed to, or approved Salesforce Case Notes relating to the vehicle.

These admissions are significant because CarMax's internal records attribute the alleged inspection to "senior management." The newly disclosed information demonstrates that "senior management" was not an undefined or unknowable category of persons. Rather, it consisted of a limited and identifiable group of individuals whose identities were ascertainable through ordinary inquiry within the organization.

The pattern is further illustrated by certain discovery objections asserting that Plaintiff's requests failed to identify the vehicle at issue. Plaintiff's discovery

requests expressly defined the "Subject Vehicle" as the 2018 Ram 2500 bearing VIN 3C6MR5AJ6JG347736. Despite that definition, Defendants asserted objections claiming that certain requests did not adequately identify the vehicle. At the same time, Defendants' responses repeatedly referred to the "Subject Vehicle" and addressed the merits of requests concerning that vehicle. Plaintiff does not contend that this objection alone establishes misconduct. Rather, the significance of the objection lies in the inconsistency itself. Defendants simultaneously acknowledged and disputed facts that otherwise appear readily ascertainable from the record, further illustrating the pattern of inconsistent positions discussed throughout this motion.

See Ex. O (Rouse's June 12, 2026 Responses to Plaintiff's First Requests for Production), reflecting repeated objections asserting that Plaintiff failed to identify the vehicle despite Plaintiff's express definition of the Subject Vehicle by year, make, model, and VIN.

At the same time, Defendants continue to maintain that the individual associated with the alleged inspection cannot be identified, that the technician allegedly present with Mr. Rouse cannot be identified, and that no contemporaneous inspection report, technician notes, photographs, assignment records, workflow records, or comparable documentation can be identified. Defendants have likewise asserted that certain inspection-related records are unavailable due to retention practices while simultaneously maintaining objections premised upon the anticipated production of confidential and proprietary inspection-related materials subject to a Protective Order.

These positions are difficult to reconcile. Defendants have asserted that certain inspection-related records are unavailable due to retention practices while

simultaneously maintaining objections premised upon the anticipated production of confidential and proprietary inspection-related materials subject to a Protective Order. The resulting inconsistency raises substantial questions concerning what inspection-related records existed, what records were reviewed during Defendants' investigation, and what categories of documents Defendants anticipated producing during discovery.

The coexistence of these positions further raises substantial questions concerning:

• how the detailed inspection narrative reflected in Salesforce records was developed;

• what information was relied upon in creating that narrative;

• what records existed when Defendants conducted the investigation described in the Verification;

• what records were reviewed in assembling Defendants' discovery responses; and

• who possessed knowledge concerning the underlying events.

The significance of the June 12, 2026 discovery responses lies not in the creation of a new dispute, but in the progressive narrowing of facts previously represented as unknown. As additional information has been disclosed, the category of persons associated with the inspection has become increasingly limited and identifiable, while the central factual inconsistencies concerning the inspection narrative, the individuals involved, and the records supporting that narrative remain unresolved.

When considered together with Defendants' prior representations to the federal court, the Salesforce records, the Better Business Bureau response, the Declaration, the Verification, the Protective-Order-related discovery responses, and the remaining discovery responses, the newly disclosed information further supports Plaintiff's position that the record contains material inconsistencies concerning the alleged May 21, 2024 inspection, the individuals associated with that inspection, and the factual basis underlying Defendants' inspection-related representations.

## PATTERN OF INCONSISTENT AND IRRECONCILABLE INSPECTION-RELATED REPRESENTATIONS

Defendants' representations concerning inspection-related records reflect a pattern of selective disclosure, shifting explanations, and materially inconsistent statements that raise substantial questions regarding the accuracy and completeness of the record presented to the Court. During the February 24, 2026 federal discovery conference, defense counsel stated on the record that "there are no records from that day," referring specifically to the alleged May 21, 2024 post-sale inspection. Counsel did not represent that acquisition or pre-sale inspection records were unavailable, destroyed, or subject to any retention issue. To the contrary, Defendants previously sought to condition production of acquisition and pre-sale inspection documentation upon Plaintiff's execution of a proposed Protective Order, thereby indicating that such records existed, were within Defendants' possession, custody, or control, and were being withheld based upon asserted confidentiality concerns. These routine acquisition and pre-sale inspection records, generated in the ordinary course of Defendants' business operations, are distinct from proprietary methodologies, trade secrets, or other confidential business information typically requiring extraordinary protection.

After Plaintiff declined to execute the proposed Protective Order, Defendants subsequently asserted in discovery responses that certain inspection-related records were no longer available due to applicable retention policies. This later representation appears difficult to reconcile with Defendants' earlier position that inspection-related records were available for production subject to entry of a Protective Order. The timing of these representations, together with Defendants' refusal to produce acquisition and pre-sale inspection documentation, raises substantial questions concerning what records existed during Defendants' investigation, what records remained available at the time discovery responses were prepared, and whether all responsive materials have been fully identified.

These inconsistencies are further compounded by Defendants' descriptions of the alleged May 21, 2024 event. In communications submitted to the Better Business Bureau and in internal Salesforce records, Defendants represented that an "inspection" occurred on May 21, 2024 and that the vehicle's undercarriage was evaluated by "senior management." However, during proceedings before the federal court, defense counsel characterized the event in substantially different terms, indicating that someone merely "took a look at" the vehicle while simultaneously maintaining that no inspection records existed.

Defense counsel subsequently reverted to more general descriptions of the event after the inconsistency between the "took a look at" characterization and Defendants' prior written representations describing the event as an "inspection" became apparent on the record.

These differing descriptions are significant because Defendants have repeatedly relied upon the alleged May 21 inspection as a basis for their position that the condition at issue was evaluated and determined to be acceptable.

The record therefore reflects: (1) representations indicating the existence of acquisition and pre-sale inspection records sufficient to warrant a proposed Protective Order; (2) subsequent assertions that inspection-related records were unavailable due to retention policies; (3) the production of no acquisition inspection report, pre-sale inspection report, technician notes, photographs, worksheets, or comparable inspection documentation; and (4) differing descriptions of the alleged May 21 event ranging from a formal "inspection" to merely someone having "looked at" the vehicle. When considered together with Defendants' reliance upon the alleged May 21 inspection, their inability to identify the individual who performed that inspection, and their subsequent identification of two technicians associated with the relevant date without supplementation of prior disclosures or discovery responses, these circumstances present substantial questions concerning the completeness and accuracy of Defendants' representations. Plaintiff respectfully submits that these unresolved inconsistencies materially impair the Court's ability to rely upon the representations at issue and warrant appropriate relief, including further inquiry, evidentiary sanctions, adverse inferences, or such other relief as the Court deems just and proper.

The resulting inconsistency bears directly upon the reliability of the factual record presented to the Court because the relevant information appears to remain within Defendants' possession, custody, or control, or was within Defendants' possession, custody, or control during the investigation described in the Verification. Resolution of these issues is necessary to determine whether the various representations made throughout the litigation can be reconciled and whether the Court has been provided with a complete and accurate factual account concerning the alleged inspection and the investigation that followed.

Defendants' sworn statements and litigation representations also omitted material facts relevant to the Court's evaluation of the inspection narrative and the factual basis underlying Defendants' positions. These omissions include post-sale communications between Plaintiff and Mr. Rouse, photographs taken by Mr. Rouse, the August 2024 repair dispute, the partial MaxCare authorization/payment relating to rust-related repairs, and the internal characterization of the inspection as performed by "senior management."

The omission of material facts necessary to evaluate the completeness and reliability of Defendants' representations further impaired the truth-seeking function of the proceedings.

## OMISSION OF MATERIAL FACTS FROM THE VERIFICATION

The evidence at issue is not newly discovered; it is evidence CarMax possessed from the outset of this litigation and failed to disclose in its sworn Verification. CarMax's own internal Salesforce case file (Case No. 00937783) states that "the customer is upset that he took the car to the dealership and discovered rust that's preventing service," demonstrating that CarMax had documented knowledge of rust-related conditions affecting the vehicle's serviceability. See Ex. G.

This description corresponds directly with the August 2024 Tutton CDJR dealership invoice, which diagnosed the engine cooling fan clutch as "rusted solid" and documented "substantial rust and corrosion" on vehicle components. See Ex. I. CarMax subsequently issued a reimbursement check to Plaintiff in the amount of $629.29 following that repair after the warranty administrator declined to cover the full cost. See Ex. J. These facts were known to CarMax long before litigation commenced, yet they were omitted from the Verification despite their direct

relevance to the condition of the vehicle, the nature and extent of the rust damage, and Defendants' knowledge thereof.

The existence of these records raises substantial questions concerning the completeness and accuracy of the Verification and the representations made to the Court regarding Defendants' knowledge of the rust condition, its mechanical consequences, and the individuals possessing such knowledge. Because these facts were documented within CarMax's own records before litigation began and were material to the issues before the Court, Plaintiff submits that their omission from the Verification supports the requested finding of fraud upon the court.

The record further reflects that Defendants continued to maintain inconsistent positions after remand to state court. Defendants have not identified the inspector, have not reconciled the conflicting inspection narratives, have not clarified the involvement of the individuals later identified as possible inspectors, and have not supplemented disclosures or discovery responses to resolve these inconsistencies.

## CUMULATIVE EFFECT OF THE JUNE 12, 2026 DISCOVERY RESPONSES

Taken together, Rouse's June 12, 2026 discovery responses materially strengthen the pattern already before the Court. The responses confirm that "senior management" was a limited and identifiable group; that Rouse was a member of that group; that he oversaw service and operations; that he was involved with Salesforce Case Notes concerning the Subject Vehicle; that he claims personal involvement in looking at the vehicle; and that he nevertheless cannot identify the technician allegedly involved or produce contemporaneous documentation supporting the inspection narrative.

These responses do not resolve the contradictions in Defendants' prior representations. They deepen them. The newly disclosed information further supports Plaintiff's position that the Court has been presented with an incomplete, shifting, and unreliable factual record concerning the alleged May 21, 2024 inspection, the identity of the individuals involved, the source of the inspection findings, and the records allegedly supporting Defendants' inspection narrative.

Defendants were repeatedly copied on Plaintiff's Standing-Order-compliant transmissions to chambers and therefore had actual notice of the procedures Plaintiff was following pursuant to the Court's Standing Order. Plaintiff has no record of receiving comparable chambers-copy transmissions from Defendants despite being copied on all other litigation-related communications. Plaintiff does not ask the Court to infer misconduct from this circumstance alone. Rather, the circumstance is relevant because Defendants simultaneously maintained that procedural obligations should be applied symmetrically and uniformly to all parties while objecting to Plaintiff's request for clarification concerning service obligations on that basis. The inconsistency between Defendants' stated position regarding procedural symmetry and the absence of any comparable chambers-copy transmissions in Plaintiff's records is relevant to the Court's assessment of the reliability and consistency of Defendants' procedural representations.

Taken together, the cumulative effect of Defendants' conduct—including inconsistent sworn statements, omission of material facts, post-hoc reconstruction of the inspection narrative, failure to supplement disclosures, and representations made without reasonable inquiry—has substantially impaired the integrity of the judicial process and prevented adjudication upon a complete and reliable factual foundation.

Plaintiff does not request that the Court make findings of intent or credibility based upon any isolated statement viewed in isolation. Rather, Plaintiff respectfully submits that the cumulative pattern reflected in the record warrants sanctions and corrective measures sufficient to preserve the integrity of these proceedings and ensure that factual representations presented to the Court are grounded in a reasonable inquiry and supported by a reliable factual basis.

WHEREFORE, Plaintiff respectfully requests that this Court:

1. Disregard the Declaration of Letony "Tony" Rouse II to the extent appropriate;

2. Disregard or give no evidentiary weight to Defendant's Verification to the extent appropriate;

3. Require Defendants to supplement disclosures and discovery responses concerning the alleged inspection and the individuals involved;

4. Require Defendants to identify the factual basis and supporting documentation, if any, underlying the inspection-related conclusions communicated to Plaintiff and third parties;

5. Award such sanctions, costs, or other relief as the Court deems just and proper; and

6. Grant such other and further relief as this Court deems appropriate.

Respectfully submitted,
This 15th day of June, 2026.

DAVID JOSEPH CERNANCE
Pro Se Plaintiff
616 Hickory Cove Rd
Jasper, GA 30143-6859

**EXHIBIT A**

Defendant Letony "Tony" Rouse II's December 22, 2025 Declaration.

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

DAVID JOSEPH CERNANCE,

    Plaintiff,

    vs.

CARMAX AUTO SUPERSTORES, INC.,

    Defendant.

CIVIL ACTION FILE
NO.: 2:25-cv-00387-SCJ

## DECLARATION OF LETONY ROUSE II

I, Letony Rouse II, pursuant to 28 U.S.C. § 1746, do hereby swear, affirm, and attest under the penalties of perjury, as follows:

1.

I am over twenty-one (21) years of age, and I am competent to testify as to the matters contained herein.

2.

I am employed by CarMax Auto Superstores, Inc. ("CarMax") as an Operations Manager.

3.

I have worked as the Operations Manager at the CarMax store located at 11450 Alpharetta Highway, Roswell, Georgia 30076 since October 2023.

-1-

4.

The statements contained in this Declaration are based upon my personal knowledge, which has been gained from my experience as well as my review of the business records of CarMax.

5.

I understand that this Declaration is being submitted in connection with a response memorandum filed by CarMax in opposition to plaintiff's motion for leave to amend complaint and motion to remand.

6.

In my position as an Operations Manager, I am not generally involved in the direct process of selling a vehicle to a customer.

7.

As such, I do not generally communicate with customers about any matters that relate to or concern any vehicle that a customer intends to purchase from CarMax before the customer purchases the vehicle, including the condition of the vehicle to be purchased.

8.

I understand that David Joseph Cernance purchased a 2018 RAM 2500 (VIN 3C6MR5AJ6JG347736) ("subject vehicle") from CarMax on or about May 16, 2024.

-2-

9.

I was not directly involved in the process of selling the subject vehicle to David Joseph Cernance on or about May 16, 2024.

10.

Consequently, I did not speak with David Joseph Cernance on or about May 16, 2024, about the subject vehicle, nor did I speak with him on any date before then about the subject vehicle.

11.

Since I did not speak with him on or before the date that he purchased the subject vehicle from CarMax, I did not make any representations or misrepresentations to David Joseph Cernance about the subject vehicle, including about the condition of it.

12.

Furthermore, since I did not speak with him on or before the date that he purchased the subject vehicle from CarMax, I did not disclose or fail to disclose any information to David Joseph Cernance about the subject vehicle, including the about the condition of it.

13.

The first time I spoke with David Joseph Cernance about the subject vehicle was after he had already purchased it from CarMax and became the owner of it.

-3-

14.

I am not personally a party to any contract with David Joseph Cernance related to or concerning the subject vehicle.

15.

I am a citizen and resident of the State of Georgia.

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

Executed on this 22nd day of December, 2025.

 

_____
LETONY ROUSE II

**EXHIBIT B**

Defendants' February 13, 2026 Verification of Discovery Responses.

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINSVILLE DIVISION

DAVID J. CERNANCE,

      Plaintiff,

     vs.

CARMAX AUTO SUPERSTORES, INC.,

      Defendant.

CIVIL ACTION FILE
NO.: 2:25-CV-00387-SCJ

## VERIFICATION

STATE OF GEORGIA

COUNTY OF Fulton

Personally appeared before me, the undersigned officer, duly authorized to administer oaths, Letony Rouse II, and states that he signs this Verification for and on behalf of CarMax Auto Superstores, Inc. ("CarMax") and that he is duly authorized to do so; that the facts stated in the foregoing *Defendant CarMax Auto Superstores, Inc.'s Responses and Objections to Plaintiff's First Interrogatories* are not within the personal knowledge of any one person at CarMax, and, as a result, they have been assembled by certain authorized employees of and counsel for CarMax from certain records and files kept by CarMax in the regular and ordinary course of business, and from interviews of certain authorized CarMax employees; and, that said facts are true and correct to the best of his knowledge and belief.

Sworn to and subscribed before me
this 13 day of February,
2026.

NOTARY PUBLIC
My Commission Expires:
06/15/2029

CARMAX AUTO SUPERSTORES, INC.

By: _____
Name: Letony Rouse II
Title: Operations Manager

**EXHIBIT C**
Relevant Pages from February 24, 2026 Federal Discovery Conference Transcript
(Transcript Pages 2–15).

Purpose:

- Defendants' inability to identify inspector.
- "No records from that day" representations.
- BBB discussion.
- Fee request.
- Judge Jones' standing-order comments.

1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION


DAVID J. CERNANCE,                    )
                                      )   CIVIL ACTION NO.
          vs.                         )   2:25-CV-00387-SCJ
                                      )
                                      )
CARMAX AUTO SUPERSTORES,              )
INC.,                                 )
                                      )
          Defendant.                  )
_____)

--------------------------------------------------------------

BEFORE THE HONORABLE STEVE C. JONES
UNITED STATES DISTRICT JUDGE
TRANSCRIPT OF TELEPHONE CONFERENCE
FEBRUARY 24, 2026
--------------------------------------------------------------

APPEARANCES OF COUNSEL:

For the Plaintiff:          DAVID J. CERNANCE, PRO SE


For the Defendant:          SEAN E. BOYD, ESQ.
                            MOZLEY, FINLAYSON & LOGGINS LLP




          *Proceedings recorded by mechanical stenography
           and computer-aided transcript produced by*

               KEISHA M. CRUMP, RMR, CRR, RPR
                    Official Court Reporter
                     1759 U.S. Courthouse
                    75 Ted Turner Drive, SW
                    Atlanta, Georgia 30303




UNITED STATES DISTRICT COURT
CERTIFIED OFFICIAL TRANSCRIPT

2

(Atlanta, Fulton County, Georgia, February 24, 2026, in open court at 3:00 p.m.)

                    -   -   -

                    P R O C E E D I N G S

THE COURT:  Gentlemen, thank you-all for your patience.  I need to ask one small favor of you-all.

MR. BOYD:  Yes, sir.

THE COURT:  The court reporter's call dropped, so some of the things we talked about was not recorded.  So I'm going to ask that we're going to kind of repeat some of it.  Again, I appreciate your patience.

Mr. Boyd, if you would -- first of all, what the Court established that a nonparty, the defense counsel is not required to set up depositions for nonparties.  If the plaintiff wants a nonparty to a deposition, it has to be done by the plaintiff.

In this case, Mr. Cernance agrees that these people are nonparties, and then Mr. Boyd is going to give the names of the two nonparties.

MR. BOYD:  Yes, sir.  And I -- would you like me to repeat that for the record, Your Honor?

THE COURT:  Yes, sir.

MR. BOYD:  Okay.  The names of the two individuals' first name, the first individual's first name is Tim, T-I-M; last name is A-H-R-E-N-S.  Second individual is Daniell,

D-A-N-I-E-L-L; last name Richardson, R-I-C-H-A-R-D-S-O-N.

THE COURT:  Thank you, sir.

MR. BOYD:  Yes, sir.

THE COURT:  Okay.  I think plaintiff was stating something before we stopped, so if you want to pick up from right there.

MR. CERNANCE:  Sure.  Your Honor, I'm not asking for speculation or possibilities.  I'm asking for the correct identity of the May 21st inspector and inspection documentation.  The defendant has now given two different names.

THE COURT:  Well, he just told me -- excuse me.  Mr. Boyd started off the conversation by saying he was not saying that these was the right people.  These are the only two names he's been able to come up with.  So he's giving you those names and understanding he's not swearing or vouching these are the people.  It's just based on his responsibility to look and see can he find it.  He has done that.

MR. CERNANCE:  I'm trying -- so I took my truck in.  I gave it to the operations manager.  He gave me back the results for my inspection, and they said that they've reviewed all documentation, and they're unable to figure out to pinpoint who did the inspection when their own operations manager gave me the result, and they said they looked through all of their records.  They can't -- they say they don't have

4

any inspection report.  That's -- they've admitted that, and now they don't -- they can't figure out the identity of the person who did my inspection, and now they give two different names.

I think the -- they can give a whole list, and each person is going to say, no, they didn't do it.  If they're not the right person, I don't know who did it.  All I'm asking for is the true identity of the person who did it and the person who gave me the results.

THE COURT:  Well, again, Mr. Boyd has certain responsibilities.  And based on what he's telling me, as an officer of this Court, he has done his -- he's checked, he's researched, and all he's able to come up with are two names, but he can't swear these are the same two names though.  In other words, he can't do any more than you can do in getting a name from them.  I think they may know the name; they may not.  But I can't think what else I can make Mr. Boyd do, you know, other than what he's already done.

With that stated, the other question you had, and you wanted CarMax corporate representative pursuant to Rule 36. Is that correct, Mr. Cernance?

MR. CERNANCE:  Yes.

THE COURT:  Mr. Boyd, do you know who's going to be the CarMax representative, corporate representative?

MR. BOYD:  Yes.  This is Mr. Boyd for the record.

Your Honor, the discussion that I had had with Mr. Cernance in the back and forth was that we would -- he mentioned to me he wanted to do the depositions in order. He wanted to do the inspector, the corporate representative, and then a guy by the last name of Rouse, so my understanding was we had not gotten to the point where we had decided on topics. So until I have definitive topics, I'm hesitant to say who might be that person because I haven't had a chance to conversate with my client about that.

I've certainly passed along the deposition notice to them, but we have not come up with a finality of topics yet for me to discuss with them. So at this time, Your Honor, I do not have a corporate representative or representatives that I can identify. And, candidly, I was not aware that that would be before the Court today.

THE COURT: Okay. Mr. Cernance, do you know when you're going to have the topics that you can present to Mr. Boyd? In other words, he's saying he can't have a corporate representative. He has to have somebody talk about the topics that you want to talk about.

MR. CERNANCE: Correct. I'll get them prepared for him. But still with the answers that he's given today, that still is incomplete that they have complete control of all of the documents and records. And they're saying that they're unable to provide me with the person who did the inspection of

6

my truck.

THE COURT:  Well, here's what I'm saying again is that --

MR. CERNANCE:  Yes, sir.

THE COURT:  Again, Mr. Boyd, you correct me if I'm wrong, but my understanding from Mr. Boyd is that he's looked at his documents.  He's talked to people at the company, and he's only able to come up with two names, and he can't come up with a name based on the documents.  He's checked with his company and going to the company to know who inspected the truck.  Is that correct, Mr. Boyd?

MR. BOYD:  Yes, Your Honor.  That's my understanding.

THE COURT:  So he's saying he's looked through these documents that you say he has, and he still can't come up with a definite name, so he's on record as an officer of the Court saying if you can show something different, then Mr. Boyd will have some problems with this Court.  But he's taking a position he's looked through all these documents, and he can't come up with a guaranteed name other than these two he's given you.

MR. BOYD:  Yes, Your Honor, not based on what I -- not based on what I've been provided by my client or the representations that have been provided to me by my client.  Yes, sir, that's correct.

THE COURT:  So, again, Mr. Cernance, is that I take

Mr. Boyd's word.  He's as an officer of the Court for the Northern District of Georgia.  He's giving you what he has, so I don't know --

MR. CERNANCE:  All right.  Am I able to file something more to have them do further investigation into the records because --

THE COURT:  No.

MR. CERNANCE:  As I said --

THE COURT:  I've asked him three times is there anything he can look at that could show more definite, and three times he's basically giving me the same answers:  I've looked, I've checked, this is all I have.  So I don't know what else you could file unless you've got something showing you have checked and you can't come up with it, the name.  In other words, I don't know what I can tell Mr. Boyd to do.

What else do you want me to ask him to do?

MR. CERNANCE:  I -- if they get the report, I'm sure they can speak to the operations manager who gave me the results.  He obviously knows who he gave my truck to and who inspected it.  He told me on the date that I came in there on November 11th, he said, I already inspected your truck.  But now nobody can remember who inspected it.  And that's what I'm finding very troubling.  I went there.  I asked for the inspection records.  They told me I was not allowed to have them.  They told me that the truck was already inspected on

May 21st --

THE COURT: Well, let's do this. Let's do this. Let's do this. Mr. Boyd --

MR. CERNANCE: Yes.

THE COURT: Mr. Boyd, do you have the inspection records?

MR. BOYD: Your Honor, he keeps talking about inspection records. I've been represented too that there are no records from that day, this May 21st date. My understanding is -- from my understanding, Mr. Cernance came in unannounced, and this may be -- this is just what I've been told, and I may be off on this; he may find something different through discovery. But my understanding is he came to that location on May 21st of 2024, you know, almost over a year and a half ago, and that someone took -- did take a look at the vehicle, but my understanding was there wasn't, you know, any documentation that was, you know, completed or anything of that nature.

Mr. Cernance also keeps referencing the operations manager whose name he does have, Tony Ralph or Tony Rouse, and so he already does have that information. So he has the information of one person he spoke to, which has been given to him multiple times, so he does have avenues available to himself to conduct discovery in this case.

THE COURT: Mr. Cernance, I would suggest, and you

have Mr. Tony Rouse's name, that you do a deposition with him, do interrogatories with him, or question him in detail about, you know, what happened on the 21st of May.

MR. BOYD: And, Your Honor, I'll make the representation to the Court, if I -- if I am told or provided any other additional information that's responsive to this request regarding the May 21, 2024, inspection or inspector, I'll be more than happy to pass it along diligently.

THE COURT: Please do that, Mr. Boyd. I appreciate that.

MR. BOYD: Yes, sir.

THE COURT: So, Mr. Cernance --

MR. CERNANCE: Your Honor? Your Honor?

THE COURT: Go ahead. Go ahead.

MR. CERNANCE: CarMax stated -- so in the beginning when I was having the dispute with them, they -- they admitted to the Better Business Bureau, and it's in the file, that an inspection occurred on May 21st and that that vehicle, the results were that it was cosmetic rust, so they had to use something to base that information off to give that to a third party. Now Mr. Boyd is saying that no inspection occurred on May 21st, but that's contradictory to the report that they gave to the Better Business Bureau, which is within the file saying that an inspection occurred, and the results were it was cosmetic. Now Mr. Boyd is saying that --

10

THE COURT:  Do you already -- do you have -- do you have that report that you just quoted?

MR. CERNANCE:  Yes, sir.

THE COURT:  Well, then --

MR. CERNANCE:  Yes, sir.

THE COURT:  Well, then you have something that Mr. Boyd don't have.

MR. CERNANCE:  No.  No.  It's --

MR. BOYD:  I was going to say I haven't seen a May 21, 2024, inspection report.

MR. CERNANCE:  No.  No.  Inside -- I was never afforded the inspection report.  But inside of the -- the stuff that I filed with the superior court, I included all of the Better Business Bureau responses from CarMax corporate where they stated, we did an inspection.  The inspection was done on this date, the results were this.  That's inside of there.  You-all would never give me the inspection report, but you-all stated that an inspection occurred, the results of the inspection, and the date the inspection occurred on.  Now, that was to deny my return.  Now they --

THE COURT:  Well, let me ask you this.  Hold on.  Hold on.

MR. CERNANCE:  Yeah.

THE COURT:  This information you said -- that you just quoted, do you have that?

11

MR. CERNANCE:  Yes, sir.

THE COURT:  So why can't you read that and determine who did the inspection?

MR. CERNANCE:  I asked Mr. Boyd to --

THE COURT:  No, hold on.  Hold on.  No, hold on. Answer my question.

MR. CERNANCE:  Yes, sir.

THE COURT:  Why can't you not read what you already have to see who did the inspection?

MR. CERNANCE:  Because it doesn't say the person's name.  It only comes from corporate representatives saying we contacted the store; the store told us that the truck was inspected on May 21st; the inspection was relayed to Mr. Cernance.  It doesn't say the person who did the inspection at all.  And when I asked for the inspection reports, they won't give them to me.

THE COURT:  Who signed --

MR. CERNANCE:  Now they're saying there is no --

THE COURT:  Who signed the information you have now that you're talking about?  Who signed that report?

MR. CERNANCE:  That's all -- it's from the Better Business Bureau from CarMax corporate offices.

THE COURT:  Nobody --

MR. CERNANCE:  Their official response.

THE COURT:  The Better Business Bureau got a report,

12

made you a copy. There's nobody's name on that report at all, period?

MR. CERNANCE: The person who -- the representative that -- I don't have the name in front of me, but I think her name was Naomi. Their names are on the report. There's no diagnostic report. It's just a reply back where I said that my truck, I took it in, and they said, yes, Mr. Cernance's truck was inspected on May 21st, and it said the results were that it was cosmetic in nature. But it doesn't say who gave this information to the Better Business Bureau.

So Mr. Boyd is saying that they can't identify who did the inspection. Whoever gave this information to the Better Business Bureau obviously looked at records to determine that the truck was inspected, and they gave the results. That just doesn't come out of the clear air.

THE COURT: Mr. Cernance, one last time: Mr. Boyd has told this Court four times he has looked. He can't find it. He doesn't have the information to give it to him. So, obviously, I can't order him to give you something that he doesn't have or that he can't --

MR. CERNANCE: Correct.

THE COURT: -- not in his possession of what's been given to him by the company. My suggestion to you is if you have information from the Better Business Bureau --

MR. CERNANCE: Yeah.

13

THE COURT:  -- I would start researching my discovery there and work backwards.  So what's next?

MR. CERNANCE:  I -- so I asked Mr. Boyd with the stuff that I've been given from the Better Business Bureau, and now Mr. Boyd has stated on the record today that no inspection occurred.

THE COURT:  No, he didn't --

MR. BOYD:  Now, I will -- now, I want to back away from that.  I never said that.

THE COURT:  He never said that.

MR. BOYD:  To the extent that's been represented, I want to back away from that.  And my understanding is the vehicle was looked at on May 21, 2024.  We can -- we can go back and forth on terms.  I do understand the vehicle was looked at.  Whether it quote/unquote meets your definition of an inspection, I don't know, but I do know it was looked at on that date, so I'm going to clear the record on that.

THE COURT:  All right.  Hold on.  I've ruled on this inspection.  What's next?  What's the next issue we have?

MR. CERNANCE:  That those are the only two issues I had was I needed to schedule a deposition for the definitive person who did the inspection, and they still are not giving me the name of the person.  They're giving me other names but not the name of the person who actually did it.

THE COURT:  Okay.  All right.  Mr. Boyd, if you

ever -- if the name comes across your desk and you receive information from the company of the name, you'll give that to Mr. Cernance?

MR. CERNANCE:  Yes, sir, agreed.

THE COURT:  But at this point in time, my understanding is Mr. Boyd is not saying it wasn't an inspection.  He's not saying they didn't look at the car.  He's saying he has researched and checked.  The information the company has given him does not provide a name.  He's looked through the files and documents of the names, but he's given you the only two names that he thinks might be the people, but he's not saying they are the people.

So with that stated, and you have Mr. Tony Rouse's name, Mr. Cernance, you can -- you can set up a deposition for him.  But other than that, I can't think of anything else.  If those are the only two issues, we'll get you all a draft order in the mail tomorrow or sometime this week.

Anything else?

MR. BOYD:  Your Honor, I -- for the record, I would like to renew our request for fees and cost for having to respond to an earlier filed motion to compel that was not procedurally proper.

THE COURT:  What do you have to say about that, Mr. Cernance?  The standing order of this Court is that before you file a motion to compel, you have to contact my Deputy

Courtroom Clerk, Ms. Wright, to set up a conference call.  And Mr. Boyd has pointed out you did not follow those requirements, and they ask for attorney's fees and costs.

MR. CERNANCE:  Am I -- Am I able to speak?

THE COURT:  Yeah.

MR. CERNANCE:  I did not know that that rule existed. And as soon as I found out about it, I complied with it to be in compliance with the Court.

THE COURT:  All right.  Mr. Boyd, my only concern, and I'll still entertain your motion if you file it, is that we do not send that standing order to pro se like we do attorneys.  It creates some other problems that created more problems, so there's a possibility he may not have known about the requirement because the standing order is, again, without going in a lot of details, we just don't send it to pro se, but, of course, we do send it out to the attorneys.

MR. BOYD:  Okay.  Your Honor, again, I was just simply renewing my request.  I'll take the Court's position however they may like to handle that.  I'm not taking a firm stance.

THE COURT:  Well, I will say this:  Is that, Mr. Cernance, you're going to represent yourself, even though the Eleventh Circuit say I give consideration to a person that is a pro se person, it doesn't say I have -- I have to change the law.  In fact, they tell me I still have to abide by the

**EXHIBIT D**
Relevant Pages from March 26, 2026 Federal Discovery Conference Transcript
(Transcript Pages 2–12).

Purpose:

- Identification of Tim Arens and Daniell Richardson.
- Continued inability to identify inspector.
- Perfecting-the-record discussion.
- Deposition discussion.

1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

DAVID J. CERNANCE,                  )
                                    )   CIVIL ACTION NO.
        vs.                         )   2:25-CV-00387-SCJ
                                    )
                                    )
CARMAX AUTO SUPERSTORES,            )
INC.,                               )
                                    )
            Defendant.              )
_____ )

--------------------------------------------------------------

BEFORE THE HONORABLE STEVE C. JONES
UNITED STATES DISTRICT JUDGE
TRANSCRIPT OF TELEPHONE CONFERENCE
MARCH 26, 2026

--------------------------------------------------------------

APPEARANCES OF COUNSEL:

For the Plaintiff:          DAVID J. CERNANCE, PRO SE

For the Defendant:          SEAN E. BOYD, ESQ.
                            MOZLEY, FINLAYSON & LOGGINS LLP

*Proceedings recorded by mechanical stenography
and computer-aided transcript produced by*

KEISHA M. CRUMP, RMR, CRR, RPR
Official Court Reporter
1759 U.S. Courthouse
75 Ted Turner Drive, SW
Atlanta, Georgia 30303

UNITED STATES DISTRICT COURT
CERTIFIED OFFICIAL TRANSCRIPT

(Atlanta, Fulton County, Georgia, March 26, 2026, in open court at 10:00 a.m.)

- - -

P R O C E E D I N G S

THE COURT:  Good morning to everyone.  Thank you-all for taking this conference call.  I understand we have a discovery dispute, so we'll start off with plaintiff's counsel or plaintiff, Mr. Cernance.  My understanding --

MR. CERNANCE:  Yes, sir.

THE COURT:  -- you're requesting a number of things, so I'll hear from you.

MR. CERNANCE:  This is David Cernance.  Good morning, Your Honor.  I'm here because I guess the Court requires a conference before filing any motion to compel.  I'm ready to proceed with the depositions, but the defendant has not satisfied the obligations under Rule 26 to identify the individuals with knowledge.  And without that information, I can't conduct a meaningful deposition.

THE COURT:  Well, when you say individual without knowledge, knowledge of what?

MR. CERNANCE:  Well, first, it admits that inspections occurred, but has not identified any individual who performed, observed, or had knowledge of these inspections as required under Rule 26.

THE COURT:  Okay.  I think we went through this last

time, and Mr. Boyd indicated he did not know that person, that he had checked and -- with the company. And he stated, as an officer of this Court, he did not know who that person was. Is that correct, Mr. Boyd?

MR. BOYD: Yes, sir. That's true. We've given him the information of the individuals that were working at the time.

THE COURT: So he can't give you what he doesn't have, so unless you --

MR. CERNANCE: Okay.

THE COURT: Unless you can show me that Mr. Boyd is not being truthful to the Court, it's nothing I can give you.

MR. CERNANCE: Okay. But defendant's internal records and sworn declaration and discovery responses are inconsistent, which who has knowledge of the inspection on -- that occurred on the --

THE COURT: Well, do you know -- do you know who this person is? Mr. Boyd doesn't know.

MR. BOYD: I -- I -- your Honor, I don't. I mean, it --

THE COURT: No, I'm not asking you, Mr. Boyd. I'm talking to Mr. Cernance. Mr. Boyd, you've already told me you don't know.

MR. BOYD: Oh, I'm sorry, sir. I'm sorry, sir.

THE COURT: Mr. Boyd has already told me at the last

4

conference call, and he just told me 30 seconds ago he does not know who this person is.  So unless you know who this person is, Mr. Cernance, it's nothing I can do.

MR. CERNANCE:  So the defendant's own records identify the roles and individuals connected with the inspection, and it's including senior management, but the defendant has not supplemented it on this under Rule 26.  It's disclose -- it does not identify any individuals with -- subjects with knowledge.  It's referred to senior management.  It's right there in their discovery.

THE COURT:  Well, I think what you asked for, you aren't asking for senior management.  You're asking the person that inspected the vehicle?

MR. CERNANCE:  Yeah, and there's discovery --

THE COURT:  Well, that's different than senior management.  I'm quite sure that one of the vice presidents of the company did not come down and inspect the vehicle, so you've got to be more specific.  When you said senior management, you've got to be more specific who is senior management.

MR. CERNANCE:  Okay.  The senior management would be the operations manager of the dealership.

THE COURT:  Okay.  He can give you the name.  I'm quite sure Mr. Boyd can give you the name of the operations manager of the dealership.

5

MR. BOYD: He already has it.

MR. CERNANCE: I do. But I need him to identify that that person's role, it says in their own discovery, the truck was inspected by senior management, but they refused under Rule 26 to identify the name of the person who inspected the truck.

THE COURT: Okay. All right. What's your next issue?

MR. CERNANCE: That their -- their verification, there's a bunch of inconsistencies in the records, and I can't see how all of it -- they want me to do a deposition, but I don't have the foundational information to be able to do a correct deposition.

THE COURT: I'm not following you. I'm not quite understanding what you're saying. You said you don't have a foundation. That's just so broad, I don't understand what you're saying.

MR. CERNANCE: Hold on.

MR. BOYD: Your Honor, while he's looking for that, I will volunteer that we have already scheduled a 30(b)(6) deposition for April 24th.

THE COURT: Okay. That's good. Thank you, Mr. Boyd. That's what I like to know --

MR. BOYD: Yes, sir.

THE COURT: -- the case is moving along.

MR. BOYD: Yes, sir.

MR. CERNANCE: So under Rule 26, they went ahead and they gave two names the last conference that we had, but they've never supplemented their discovery. They've not given me any of the answers to the questions that I've asked for with the evasive answers on that they're endeavoring to find information on. They still have not given me any documentation of any of the inspections that have occurred.

They've admitted to an acquisition inspection, a presale inspection, and post-sale inspection. They've not given me any inspections for any of those, any documentation for any of the inspections, no photographs. They've not identified any name for anybody that's been involved on their, as I said, the verification, their declaration. All of this is inconsistent. None of them match up the way they should. One contradicts the other.

THE COURT: Okay. Let's let Mr. Boyd respond to that.

MR. BOYD: Yes, sir. What I have produced to Mr. Cernance is what my client has been able to provide. His representation we haven't given names as to who were involved in those prior inspections he just mentioned, we've produced to him the records that we have that have what names are involved on them. And pursuant, you know, to the discovery practice, we told him he can refer to those documents.

You know, I would simply say, and he may find himself simply from the 30(b)(6) deposition that some of the information he requests may not exist, may never have existed, and may no longer exist pursuant to retention policies.

The other thing I would mention here is Mr. Cernance is obsessed with these inspections, but I'm -- I'm struggling to find the relevancy of them, and we seem to be constantly coming back to this, but I don't know what the relevancy is.

But as far as the information he's requested, I've given him what we have. I have told him that we are endeavoring to locate in the event that there are other documents that are going to exist because I don't want to run the risk of representing there is absolutely nothing, and then we find something and then he brings me back in here and say I made misrepresentations.

I don't anticipate we're going to find anything else, but I have simply left that open in the event that we do. There's no intent to hide anything. There's no intent not to give him what exists. We're not sitting on anything over here. We've given him what still exist, you know, two years later.

THE COURT: So all these things, Mr. Boyd, that he's asked for in this conference call he requested this morning, it's my understanding you-all have given it to him or looking for?

8

MR. BOYD:  Yes, sir.  And if I receive anything else from my clients, I continue to tell them, you know, and even going in, as I mentioned before, going into this 30(b)(6) deposition, I've gotten chatter or topics from Mr. Cernance. I've asked my people, hey, you know, he's asked for this, he's asked for this, so we're checking in other channels.  And like I said, if there may happen to be something that is out there or is in another system, I'm certainly happy to give it over to him.

But to the best of my knowledge, my clients are doing their due diligence to locate responsive documents, and we've produced what is responsive.  And pursuant to our discovery obligations, we won't endeavor to determine if there are other documents that would be responsive or materials that would be responsive.

THE COURT:  All right.  Final word is yours, Mr. Cernance.

MR. CERNANCE:  I'd like to be able to -- be able to file a motion to compel so I can put everything down that I need to send you so it can be formally addressed.

THE COURT:  Well, I don't see a need for a hearing on a motion to compel.  What I've heard this morning is I haven't heard everything that Mr. Boyd or CarMax has failed to do in order for me to have a hearing on a motion to compel.  If you want to file your request on the docket, then you can go ahead

and do that. But it's not going to be a need for a motion to compel from what I've heard this morning, from what I've heard the last time, so we won't be having a motion to compel hearing. But if you want to file your questions or request on the docket, you can do that.

Now, at this time, I did not hear Mr. Boyd ask for attorney's fees, so I'm assuming he's not asking for attorney's fees this time. But I will say to you, Mr. Cernance, you can get to the point where if he does ask for attorney's fees, I will seriously consider it. This does -- you've got to be more specific once you request it.

But, again, we're not going to have a motion to compel. At this time, since Mr. Boyd is not asking for attorney's fees, I will not entertain it. And you can file whatever you think you need to file on the docket, and you can start getting prepared for that 30(b)(6) deposition hearing.

Anything else?

MR. CERNANCE: Judge Jones, can you clarify? Are you saying that you're giving me permission to go ahead and file a motion to compel?

THE COURT: No. No, I'm not. I'm just saying I'm not going to have a motion to compel, so you don't have permission to file it. But if you want to, you can perfect the record by filing on the docket things you think are pertinent if we had of had one so if this case has to ever go

in front of the appellate court, it would be on the docket. But I have not heard any reason to have a motion to compel hearing, so I'm not giving you permission to file a motion to compel.

MR. CERNANCE:  So if I can say what I need to say. The documents that they've sent me so far, they contradict each other.  Their salesforce logs, they --

THE COURT:  I understand that.  Mr. Cernance, I understand that, and you stated that, and I respectfully don't agree with you so far.  But you can go ahead and put that on the record and file it on the docket.  But, again, I'm not giving you permission to file a motion to compel, nor will I have a motion to compel hearing.  But I will allow you to perfect the docket by filing this information you think -- that you don't have on the docket.

But you've got to give me more specifics.  In other words, the last hearing, I questioned Mr. Boyd about this: Who inspected it?  He said, I don't know.  I've checked.  They didn't tell me.

Mr. Boyd is an officer of the Court.  To not be truthful to the Court, he could hurt himself in a lot of different ways that he and I know, so I don't think he's willing to put his professional career on the line for one car out of CarMax, so...

MR. CERNANCE:  No, of course not.

11

THE COURT:  So I have no reason to doubt what he's telling me.

MR. CERNANCE:  Your Honor --

THE COURT:  Unless you can give me specifics, I'm about ready to call this an end.

MR. CERNANCE:  So in their salesforce, first they have their declaration.  The declaration he says, it omits all activity that happened after the sale of the truck.  That's the declaration.  The verification says that they have no one person that has any knowledge of this inspection for this truck.  That's their verification.

Their salesforce log, the stuff that they've submitted to me, it shows where they recreated the complete inspection about 15 months after the inspection.  It shows the people who were --

THE COURT:  Well, Mr. Cernance, sorry to cut you off.

MR. CERNANCE:  Yes.

THE COURT:  That's why when you do the depositions on these people, you question them about that.  In other words, it's nothing you're going to gather this morning.  Mr. Boyd has already told you or told me what he has and doesn't have, so all of these things you said are contradictory, when you do these depositions on these people, that is the time to question them about it.  And if you can show me they're not being truthful, I assure you I will address the matter.  But

12

right now, I've heard nothing to go any further.

So thank both of you-all.  Have a good day, and I'll be getting you-all an order.

Anything else?

MR. CERNANCE:  Thank you very much, Your Honor.

THE COURT:  Thank you, Mr. Cernance.  Thank you, Mr. Boyd.

MR. BOYD:  Nothing from the defendant.  Thank you, Your Honor.  Bye.

(The proceedings were concluded at 10:10 a.m.)

**EXHIBIT E**
CarMax Salesforce Case File No. 00937783.

Purpose:

- "Senior management inspected the undercarriage on 5/21/24."
- Lift inspection narrative.
- Cosmetic-rust determination.
- Internal reconstruction narrative.

# Salesforce Case Notes

**CCS**
CARMAX COMPLIANCE SERVICES

Data sourced from Salesforce Case Data
Action date/time are for that action except for case resolution options presented which is set to the last case update
To search an item or list of items, enter the case number in the parameter field
For item lists, enter them line by line with no commas (should be able to copy /paste direct from excel column values)

CONFIDENTIAL - Do not copy or forward without authorization

Print Date  1/27/2026 2:57:47 PM

Prepared By: Carmax Compliance Service-Analytics

Having Access Issues? Click Here

| CASE ID CS | ACTION DT | ACTION TS | CASE NUMBER | ORIGIN | CONTACT NAME | ACCOUNT NAME | TYPE UPDATE | OLD VALUE | NEW VALUE |
|---|---|---|---|---|---|---|---|---|---|
| 5006R00001wwbfRQAQ | 05/20/2024 | 7:15:44 | 500733 | Survey | David Cernance | David Cernance | Vehicle Details | | |
| 5006R00001wwbfRQAQ | 05/20/2024 | 7:15:44 | 500733 | Survey | David Cernance | David Cernance | Next Follow Up | | 2024-05-21 |
| 5006R00001wwbfRQAQ | 05/20/2024 | 7:15:44 | 500733 | Survey | David Cernance | David Cernance | Case Subject | | concern with purchase |
| 5006R00001wwbfRQAQ | 05/20/2024 | 7:15:44 | 500733 | Survey | David Cernance | David Cernance | Created | | |
| 5006R00001wwbfRQAQ | 05/20/2024 | 7:15:44 | 500733 | Survey | David Cernance | David Cernance | Case Description | | rust under truck, customer has a concern about the amount of rust |
| 5006R00001wwbfRQAQ | 05/20/2024 | 7:15:44 | 500733 | Survey | David Cernance | David Cernance | Owner Assignment | Case Admin | Case Queue |
| 5006R00001wwbfRQAQ | 05/20/2024 | 7:15:44 | 500733 | Survey | David Cernance | David Cernance | Contact | | David Cernance |
| 5006R00001wwbfRQAQ | 05/20/2024 | 7:50:25 | 500733 | Survey | David Cernance | David Cernance | Status | New | Active |
| 5006R00001wwbfRQAQ | 05/20/2024 | 7:50:25 | 500733 | Survey | David Cernance | David Cernance | Owner | Case Queue | Tony Rouse |
| 5006R00001wwbfRQAQ | 05/20/2024 | 7:50:25 | 500733 | Survey | David Cernance | David Cernance | Store Owner | | Tony Rouse |
| 5006R00001wwbfRQAQ | 05/20/2024 | 7:50:25 | 500733 | Survey | David Cernance | David Cernance | Next Follow Up | 2024-05-21 | 2024-05-21 |
| 5006R00001wwbfRQAQ | 05/20/2024 | 11:45:43 | 500733 | Survey | David Cernance | David Cernance | Feed Comment | | Appt set to review concerns |
| 5006R00001wwbfRQAQ | 05/20/2024 | 11:46:15 | 500733 | Survey | David Cernance | David Cernance | Status | Active | Resolved |
| 5006R00001wwbfRQAQ | 05/20/2024 | 11:46:15 | 500733 | Survey | David Cernance | David Cernance | Resolution Options Presented | | |
| 5006R00001wwbfRQAQ | 05/20/2024 | 11:46:15 | 500733 | Survey | David Cernance | David Cernance | Next Follow Up | 2024-05-21 | 2024-05-21 |
| 5006R00001wwbfRQAQ | 05/20/2024 | 11:46:15 | 500733 | Survey | David Cernance | David Cernance | Status | Resolved | Closed |
| 5006R00001wwbfRQAQ | 05/20/2024 | 11:47:05 | 500733 | Survey | David Cernance | David Cernance | Feed Comment | | I spoke to David and we have set an appointment to get his truck looked at for the scratch on the door and the rust underneath. |
| 5006R00001wwbfRQAQ | 05/20/2024 | 11:48:23 | 500733 | Survey | David Cernance | David Cernance | Status | Resolved | Closed |
| 5006R00001wwbfRQAQ | 05/20/2024 | 11:48:23 | 500733 | Survey | David Cernance | David Cernance | Resolution Summary | | I spoke to David and we have set an appointment to get his truck looked at for the scratch on the door and the rust underneath. |
| 5006R00001wwbfRQAQ | 05/20/2024 | 11:48:23 | 500733 | Survey | David Cernance | David Cernance | Subject | | concern with purchase |
| 5006R00001wwbfRQAQ | 05/20/2024 | 11:48:23 | 500733 | Survey | David Cernance | David Cernance | Next Follow Up | 2024-05-21 | 2024-05-21 |
| 5006R00001wwbfRQAQ | 05/20/2024 | 11:48:23 | 500733 | Survey | David Cernance | David Cernance | Status | Closed | Resolved |

CARMAX 068

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 5006R00001wwbfRQAQ | 05/20/2024 | 11:46:23 | 500733 Survey | David Cernance | David Cernance | Description | | |
| 5006R00001wwbfRQAQ | 05/20/2024 | 11:46:32 | 500733 Survey | David Cernance | David Cernance | Status | Closed | Resolved |
| 5006R00001wwbfRQAQ | 05/20/2024 | 11:46:32 | 500733 Survey | David Cernance | David Cernance | Next Follow Up | 2024-05-21 | 2024-05-21 |
| 5006R00001wwbfRQAQ | 05/20/2024 | 11:46:32 | 500733 Survey | David Cernance | David Cernance | Status | Resolved | Closed |
| 5006R00001wwbfRQAQ | 09/15/2025 | 8:09:37 | 500733 Survey | David Cernance | David Cernance | Next Follow Up | 2025-09-16 | 2025-09-16 |
| 5006R00001wwbfRQAQ | 09/15/2025 | 8:09:37 | 500733 Survey | David Cernance | David Cernance | Next Follow Up | 2024-05-21 | 2025-09-16 |
| 5006R00001wwbfRQAQ | 09/15/2025 | 10:23:04 | 500733 Survey | David Cernance | David Cernance | Next Follow Up | 2025-09-16 | 2025-09-16 |
| 5006R00001wwbfRQAQ | 09/19/2025 | 12:46:40 | 500733 Survey | David Cernance | David Cernance | Next Follow Up | 2025-09-16 | 2025-09-20 |
| 5006R00001wwbfRQAQ | 09/23/2025 | 10:20:20 | 500733 Survey | David Cernance | David Cernance | Next Follow Up | 2025-09-20 | 2025-09-24 |
| 5006R00001wwbfRQAQ | 09/23/2025 | 10:20:20 | 500733 Survey | David Cernance | David Cernance | Next Follow Up | 2025-09-24 | 2025-09-24 |
| 5006R00001wwbfRQAQ | 10/13/2025 | 16:28:47 | 500733 Survey | David Cernance | David Cernance | Next Follow Up | 2025-09-24 | 2025-10-14 |
| 5006R00001wwbfRQAQ | 11/12/2025 | 11:57:15 | 500733 Survey | David Cernance | David Cernance | Next Follow Up | 2025-10-14 | 2025-11-13 |
| 5006R00001wwbfRQAQ | 11/12/2025 | 11:57:15 | 500733 Survey | David Cernance | David Cernance | Next Follow Up | 2025-11-13 | 2025-11-13 |
| 5006R00001wwbfRQAQ | 11/18/2025 | 9:33:54 | 500733 Survey | David Cernance | David Cernance | Next Follow Up | 2025-11-13 | 2025-11-19 |
| 5006R00001wwbfRQAQ | 11/18/2025 | 9:33:54 | 500733 Survey | David Cernance | David Cernance | Next Follow Up | 2025-11-19 | 2025-11-19 |
| 5006R00001wwbfRQAQ | 11/19/2025 | 8:11:05 | 500733 Survey | David Cernance | David Cernance | Case Resolution Options Presented | | Appt set to review concerns |
| 5006R00001wwbfRQAQ | 11/19/2025 | 8:11:05 | 500733 Survey | David Cernance | David Cernance | Next Follow Up | 2025-11-19 | 2025-11-20 |

Internal Use Only

CARMAX 069

# Salesforce Case Notes

**CCS**
CARMAX COMPLIANCE SERVICES

Data sourced from Salesforce Case Data
Action date/time are for that action except for case resolution options presented which is set to the last case update
To search an item or list of items, enter the case number in the parameter field
For item lists, enter them line by line with no commas (should be able to copy/paste direct from excel column values)

Print Date: 12/7/2025 2:43:26 PM

Prepared By Carmax Compliance Service-Analytics

Having Access Issues? Click here

CONFIDENTIAL - Do not copy or forward without authorization

| CASE ID CS | ACTION DT | ACTION TS | CASE NUMBER | ORIGIN | CONTACT NAME | ACCOUNT NAME | TYPE UPDATE | OLD VALUE | NEW VALUE |
|---|---|---|---|---|---|---|---|---|---|
| 500PW00000akviZYAQ | 09/12/2025 | 12:03:35 | 937783 | Phone | David Cernance | David Cernance | Case Description | | The customer is upset that he took the car to the dealership and discovered rust that's preventing service. |
| 500PW00000akviZYAQ | 09/12/2025 | 12:03:35 | 937783 | Phone | David Cernance | David Cernance | Next Follow Up | | 2025-09-13 |
| 500PW00000akviZYAQ | 09/12/2025 | 12:03:35 | 937783 | Phone | David Cernance | David Cernance | Owner | Cassandra Riley | Case Routing Queue |
| 500PW00000akviZYAQ | 09/12/2025 | 12:03:35 | 937783 | Phone | David Cernance | David Cernance | Case Subject | | Service Concerns |
| 500PW00000akviZYAQ | 09/12/2025 | 12:03:35 | 937783 | Phone | David Cernance | David Cernance | Vehicle Details | | 2018 Ram 1500 | 3C6MR5AJ6JG347736 | 25619443 CURRENT MILES | 17x DOFMILES | 5/16/2024 - 7.807 |
| 500PW00000akviZYAQ | 09/12/2025 | 12:03:35 | 937783 | Phone | David Cernance | David Cernance | Created | | |
| 500PW00000akviZYAQ | 09/12/2025 | 12:04:05 | 937783 | Phone | David Cernance | David Cernance | Contact | | David Cernance |
| 500PW00000akviZYAQ | 09/12/2025 | 13:06:41 | 937783 | Phone | David Cernance | David Cernance | Owner | Case Routing Queue | David Willis |
| 500PW00000akviZYAQ | 09/12/2025 | 23:23:55 | 937783 | Phone | David Cernance | David Cernance | Store Owner | | Kenya Sanders |
| 500PW00000akviZYAQ | 09/12/2025 | 23:26:58 | 937783 | Phone | David Cernance | David Cernance | Feed Comment Reply | | Will partner with @Tony Rouse and @Darrall Cuylear on Monday |

Internal Use Only

CARMAX 087

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 500PW00000skvtZYAQ | 09/15/2025 | 8:17:34 | 937783 Phone | David Cernance | David Cernance | Feed Comment | | Hello, Team! Thanks for driving us forward. We received notice about a customer issue and wanted to calibrate our approach. I've outlined the concern and what support is needed below. I appreciate your review and look forward to working together @Kimya Sanders @Tory Rouse @Darrell Cuylear Area of Business Service [Retail, Standards]Customer Info: DAVID CERNANCE | 8175707097 | davidcernance@gmail.comVehicle Info: 2018 Ram 1500 (25819443) | 3C6MR5AJ6JG347736 | SOLD: 5/16/2024 - 7,807 | Current mileage: ~17,000 mESP Fidelity - $50 | 5/16/2029 - 150,000 | P00079039052Recap Customer Concern: Customer requesting rust remediation and underbody coating due to rust identified during his 90 Day Limited Warranty for unrelated repairs required to fan, during which Dodge dealer identified rust. CarMax has stated rust is within our standards, and customer is frustrated by lack of assistance and inability to communicate with senior leadership.Research Conducted to Validate: Original offer from Norwood, MA in April 2024 notes undercarriage is rusted - Notes from CQI indicate plow mount, which, along with low mileage, are strong indicators unit sat for long periods in interim between use in an area where road conditions would have accelerated corrosion -Parent case 500733 opened four days after purchase from a survey notes concerns with undercarriage rust, with resolution from then LGM affirming a conversation between the two to arrange an appointment &quot;to get his truck looked at for the scratch on the door and the rust underneath.&quot; There is a subsequent appointment set 5/20 for 5/21/24 that reviews paint issue on D/S and P/S door and a misaligned rear bumper, but no line item that affirms rust level was inspected. Partnership Request: Team, like IL#09,ve shared below, while I am surprised at the timing of the customer&#39;s complaint, I am wondering after the rust level present at our intake. Facts of the vehicle origin would support there being some amount of subframe rust. If OfferHub photos are still available, would we be able to review for perforated rust? What are your thoughts? Thanks for your attention and partnership! |
| 500PW00000skvtZYAQ | 09/15/2025 | 8:28:40 | 937783 Phone | David Cernance | David Cernance | Next Follow Up | 2025-09-13 | 2025-09-15 |
| 500PW00000skvtZYAQ | 09/15/2025 | 9:44:43 | 937783 Phone | David Cernance | David Cernance | Store Owner | Kimya Sanders | Tory Rouse |
| 500PW00000skvtZYAQ | 09/15/2025 | 9:48:23 | 937783 Phone | David Cernance | David Cernance | Feed Comment | | Spoke with the customer and informed him that the vehicle met CarMax standards to sell. The vehicle was inspected here at the store shortly after the customer purchased as this was brought up previously by the customer. The customer is asking that we have the frame sand blasted which is metal treatment that we would not offer or cover. The store would not offer any type of repair for this. |
| 500PW00000skvtZYAQ | 09/15/2025 | 9:48:49 | 937783 Phone | David Cernance | David Cernance | Status | New | Resolved |
| 500PW00000skvtZYAQ | 09/15/2025 | 9:48:49 | 937783 Phone | David Cernance | David Cernance | Resolution Options Presented | | |
| 500PW00000skvtZYAQ | 09/15/2025 | 10:01:56 | 937783 Phone | David Cernance | David Cernance | Resolution Options Presented | | |

Internal Use Only

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 500PW00000skvZYAQ | 09/15/2025 | 10:32:57 | 937783 Phone | David Cemance | David Cemance | Feed Comment | | Internal Partnership, Teams. 9/15 - 10:18a EST. @Tony Rouse and I calibrated on alignment. There is no new information as to how rust is impacting vehicle performance or required repairs. Customer was changing his oil last week; he noticed oil pan was rusty; he had reached out last Friday after taking his vehicle to a Dodge dealer to determine what remediation methods were available, as that facility had confirmed that the undercarriage was rusted. Tony and David shared a discussion Friday afternoon about what steps CarMax could support with that rust being within our standards. Shortly after purchase, following resolution of survey case, vehicle was brought in for standards review. Shop had placed vehicle on a lift to inspect undercarriage and subframe, but didn&#39;t open a line. At that time, rust was within CarMax&#39;s standards; customer was also within his 10 Day MBG and could have opted to return it. At this juncture, with no new information about - for example, a bolt being unable to be torqued or a drain plug for that oil pan unable to be removed due to rust, CarMax cannot participate in methods, like sandblasting and anti-corrosive undercoating, to remediate that rust. The information available about that vehicle&#39;s origin were available prior to purchase, as was CarMax&#39;s position about the presence of rust. The customer elected to both buy and keep the vehicle. Asides from an appraisal, CarMax 7298 unable to participate in greater support. |
| 500PW00000skvZYAQ | 09/15/2025 | 16:04:30 | 937783 Phone | David Cemance | David Cemance | Feed Comment | | Outbound call. 9/15 - 3:55p EST. Attempt #1. I called customer to deliver resolution (partnership has been taken both with store-level and CR leadership). Due to the time that has elapsed since purchase and previous review to determine whether present underbody rust met standards at the time of purchase, CarMax is unable to participate in defraying the costs of remedial rust-removal methods like sandblasting or the application of anti-corrosive undercoating. CarMax does tolerate some amount of surface rust below the vehicle, and partnership with senior management at our Roswell team, who inspected the undercarriage at an appointment on 5/21/24, have indicated that the concern was reviewed shortly after purchase to notify customer of whether the structural integrity of the metal was compromised. Our review indicates that the rust underneath vehicle was a cosmetic condition. With the review that was conducted inside the customer&#39;s Love Your Car Guarantee window, the customer had the opportunity to return the vehicle after being told the rust met our mechanical standards. Pre-purchase review about the facts of this vehicle&#39;s origin and potential for corrosion were available prior to purchase, and current dissatisfaction with that present rust does not influence what is possible from CarMax. Customer was unavailable. I left voicemail inviting callback and providing my direct extension. |
| 500PW00000skvZYAQ | 09/15/2025 | 16:04:53 | 937783 Phone | David Cemance | David Cemance | Next Follow Up | 2025-09-15 | 2025-09-16 |
| 500PW00000skvZYAQ | 09/16/2025 | 11:59:05 | 937783 Phone | David Cemance | David Cemance | Feed Comment | | Outbound call. 9/16 - 11:57a EST. Attempt #2. I called customer to deliver resolution. Customer unavailable. Closing case for customer unresponsiveness. |
| 500PW00000skvZYAQ | 09/16/2025 | 12:00:32 | 937783 Phone | David Cemance | David Cemance | Status | Resolved | Closed |
| 500PW00000skvZYAQ | 09/16/2025 | 12:00:32 | 937783 Phone | David Cemance | David Cemance | Resolution Options Presented | | |
| 500PW00000skvZYAQ | 09/17/2025 | 13:42:12 | 937783 Phone | David Cemance | David Cemance | Feed Comment | | Inbound call. Voicemail reviewed. 9/17 - 1:41p EST. Customer called in and left voicemail, announcing that he has received my voicemails but that he works M-W nights and sleeps during the day. He states he will be available R-F for callback. Maintaining closure. |
| 500PW00000skvZYAQ | 09/17/2025 | 13:43:03 | 937783 Phone | David Cemance | David Cemance | Feed Comment Reply | | Inbound call. Voicemail reviewed. 9/17 - 1:42p EST. Customer left another voicemail inviting callback. |

Internal Use Only

| 500FW00000skviZYAO | 09/19/2025 | 10 55 36 | 937783 Phone | David Cernance | David Cernance | Feed Comment |

Inbound call, 9/19 - 10 07a EST. (40m) Customer called in and we were able to review his experience, and I was able to reinforce the resolution and share company alignment. Customer reviewed his entire experience, stating information consistent with what is already captured inside the case details. The vehicle is in operable condition, and the oil change was able to be completed. Customer has been able to complete all repairs despite the rust, and he states that a &quot;dealership paid for labor&quot; of a previous oil change due to how difficult components were to remove. Customer now upset with how the vehicle was described—at sales, due to it&#39;s low mileage, that it was &quot;near mint&quot; and &quot;like new,&quot; and that he was not disclosed of the present rust. I informed him, through personal lessons learned through enjoyment with body-on-frame Toyota trucks, that more so than any kind of malicious omission, CarMax provides what information it can to empower a customer to research their purchase. The facts of the vehicle, it&#39;s place of origin, it&#39;s mileage, all can prepare a customer to verify things that may dissuade them from purchase. (The customer was aware the vehicle came from the NE and had low mileage, which presumes the vehicle sat, and he could have reviewed the undercarriage condition prior to purchase. When he didn&#39;t (or other customer&#39;s don&#39;t). CarMax relies on the apparatus of our reconditioning inspections and 90 Day Limited Warranty coverage to verify that our vehicles meet our retail standards. The rust did meet standards both at our reconditioning inspection and review on a lift less than ten days from his purchase. Customer states he will file with the BBB and other GA consumer protection programs. He states he may even seek legal action, but that he wouldn&#39;t engage an attorney, only &quot;file something himself if it&#39;s easy.&quot; Customer does not feel like the outcome is fair given the price he paid for the truck, and how is expected to pay $6000 more for rust remediation. Customer asked to speak with a manager, and I stated I had already partnered preemptively with our leadership team during a case calibration, and the company is aligned. Customer asked to receive something in writing. I informed him I would partner to see what I could share and send what I can send. I will clear verbiage with Legal and email customer. Maintaining case closure. @Javonte McNear @Tony Rouse @Darrel Cuyler viz

Internal Use Only

CARMAX 090



| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 500PW00000skvIZYAQ | 09/19/2025 | 15:19:29 | 937783 Phone | David Cernance | David Cernance | Status | Closed | Active |
| 500PW00000skvIZYAQ | 09/19/2025 | 15:39:45 | 937783 Phone | David Cernance | David Cernance | Status | Active | Resolved |
| 500PW00000skvIZYAQ | 09/19/2025 | 15:40:01 | 937783 Phone | David Cernance | David Cernance | Status | Resolved | Closed |
| 500PW00000skvIZYAQ | 09/20/2025 | 14:22:39 | 937783 Phone | David Cernance | David Cernance | Status | Closed | Active |
| 500PW00000skvIZYAQ | 09/22/2025 | 8:11:35 | 937783 Phone | David Cernance | David Cernance | Status | Active | Resolved |
| 500PW00000skvIZYAQ | 09/22/2025 | 8:11:53 | 937783 Phone | David Cernance | David Cernance | Status | Resolved | Closed |

Internal Use Only

| 500PW00000sknZYAQ | 11/20/2025 | 8:08:31 | 937783 Phone | David Cermance | David Cermance | Case Resolution Options Presented |
|---|---|---|---|---|---|---|

Due to the time that has elapsed since purchase and previous review to determine whether present underbody rust met standards at the time of purchase, CarMax is unable to participate in defraying the costs of remedial rust-removal methods like sandblasting or the application of anti-corrosive undercoating. CarMax does tolerate some amount of surface rust below the vehicle, and partnership with senior management at our Roswell team, who inspected the undercarriage at an appointment on 5/21/24, have indicated that the concern was reviewed shortly after purchase to notify customer of whether the structural integrity of the metal was compromised. Our review indicates that the rust underneath vehicle was a cosmetic condition.

With the review that was conducted inside the customer's Love Your Car Guarantee window, the customer had the opportunity to return the vehicle after being told the rust met our mechanical standards.

Review about the facts of this vehicle's origin and potential for corrosion were available prior to purchase, and current dissatisfaction with that present rust does not influence what is possible from CarMax.

STORE: Spoke with the customer and informed him that the vehicle met CarMax standards to sell. The vehicle was inspected here at the store shortly after the customer purchased as this was brought up previously by the customer. The customer is asking that we have the frame sand blasted which is metal treatment that we would not offer or cover. The store would not offer any type of repair for this. @ David Willis, give me a call if we need to talk

Internal Use Only

CARMAX 092

**EXHIBIT F**
Defendant CarMax Auto Superstores, Inc.'s Responses to Plaintiff's First Interrogatories (Pages 1–7) and Defendants' Proposed Protective Order of Confidentiality.

Purpose:

- Protective Order representations.
- Anticipated production of confidential inspection-related materials.
- Supports Protective-Order / retention inconsistency.

IN THE SUPERIOR COURT OF PICKENS COUNTY
STATE OF GEORGIA

DAVID JOSEPH CERNANCE,

Plaintiff,

vs.

CARMAX AUTO SUPERSTORES, INC.,
and LETONY "TONY" ROUSE II,

Defendants.

CIVIL ACTION FILE
NO. 2025SUCV0721

### RESPONSES OF DEFENDANT CARMAX AUTO SUPERSTORES, INC. TO PLAINTIFF'S FIRST INTERROGATORIES

COMES NOW defendant CARMAX AUTO SUPERSTORES, INC. ("CarMax")

and, by and through its undersigned counsel, hereby responds to plaintiff's first

interrogatories, as follows:

### GENERAL OBJECTIONS

NOTE A:    CarMax objects to the Definitions and Instructions set forth in

plaintiff's first interrogatories to the extent that they attempt to enlarge or expand upon

the duties of discovery as defined by the Georgia Civil Practice Act.

NOTE B:    CarMax objects to plaintiff's first interrogatories to the extent that

they seek, without the requisite showing, information or documents that were prepared

or obtained in anticipation of litigation, or that constitute work product, or that are

protected by the attorney-client privilege or other privileges in this case.

NOTE C:    CarMax objects to plaintiff's first interrogatories to the extent that

they purport to require responses from, for, on behalf of, or relating to, any person or

Mozley, Finlayson
& Loggins LLP
A Limited Liability
Partnership
1050 Crown Pointe Parkway
Suite 1500
Atlanta, Georgia 30338

entity other than CarMax.

NOTE D:    CarMax objects to identifying or producing confidential, proprietary, and competitively sensitive or trade secret materials or information without an appropriate protective order assuring the confidentiality of the documents and the information contained herein.

Subject to and without waiving these objections, CarMax responds to plaintiff's first interrogatories, as follows:

1.

Identify the prior owner of the Subject Vehicle, including the date of acquisition and mileage at acquisition.

**RESPONSE:**    CarMax objects to interrogatory no. 1 on the grounds that the information requested about the "prior owner" is irrelevant and is not reasonably calculated to lead to the discovery of admissible evidence.  Subject to and without waiving these objections, on or around April 24, 2024, CarMax purchased the 2018 RAM 2500 (VIN 3C6MR5AJ6JG347736) (hereinafter "2018 RAM 2500") from Three Ninety Nine Neponset St Realty Trust (399 Neponset Street, Canton, Massachusetts 02021).  At that time, the 2018 RAM 2500 had approximately 7,807 miles on the odometer.

2.

Identify each person who performed, participated in, supervised, or reviewed the acquisition inspection.

**RESPONSE:**    CarMax objects to interrogatory no. 2 on the grounds that it

Mozley, Finlayson
& Loggins LLP
A Limited Liability
Partnership
1050 Crown Pointe Parkway
Suite 1500
Atlanta, Georgia 30338

-2-

is vague and ambiguous, overly broad in time and scope, unduly burdensome, and it seeks information that is irrelevant and is not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving these objections, as it relates to the 2018 RAM 2500, pursuant to O.C.G.A. § 9-11-33(c), responsive information may be derived or ascertained from the documents that CarMax has produced in response to plaintiff's requests for production. (Bates Nos. CARMAX 001 - CARMAX 009). Discovery is ongoing, and CarMax reserves the right to supplement this response to the extent permitted by the Georgia Civil Practice Act.

3.

Describe the acquisition inspection procedures performed on the Subject Vehicle.

**RESPONSE:**     CarMax objects to interrogatory no. 3 on the ground that it is vague and ambiguous, unduly burdensome, and it seeks information that is irrelevant and is not reasonably calculated to lead to the discovery of admissible evidence. CarMax further objects to providing confidential, proprietary, and competitively sensitive or trade secret materials or information that may be responsive to this interrogatory absent the entry of an appropriate protective order protecting the confidentiality of responsive documents and limiting their use to the subject litigation. Subject to and without waiving these objections, as it relates to the 2018 RAM 2500, pursuant to O.C.G.A. § 9-11-33(c), responsive information may be derived or ascertained from the documents that CarMax has produced in response to plaintiff's requests for production. (Bates Nos. CARMAX 001 - CARMAX 009). Further responsive information may be derived or ascertained from the confidential documents

Mozley, Finlayson
& Loggins LLP
A Limited Liability
Partnership
1050 Crown Pointe Parkway
Suite 1500
Atlanta, Georgia 30338

-3-

that CarMax will produce upon the entry of an appropriate protective order of confidentiality.

4.

Identify all documents relating to the acquisition inspection.

**RESPONSE:** CarMax objects to interrogatory no. 4 on the grounds that it is vague and ambiguous, overly broad in time and scope, unduly burdensome, and it seeks information that is irrelevant and is not reasonably calculated to lead to the discovery of admissible evidence. CarMax further objects to providing confidential, proprietary, and competitively sensitive or trade secret materials or information that may be responsive to this interrogatory absent the entry of an appropriate protective order protecting the confidentiality of responsive documents and limiting their use to the subject litigation. Subject to and without waiving these objections, as it relates to the 2018 RAM 2500, please see the documents that CarMax has produced in response to plaintiff's requests for production. (Bates Nos. CARMAX 001 - CARMAX 009). Further responsive information may be derived or ascertained from the confidential documents that CarMax will produce upon the entry of an appropriate protective order of confidentiality.

5.

State whether rust, corrosion, or oxidation was observed prior to sale, and identify all persons and documents supporting your answer.

**RESPONSE:** CarMax objects to interrogatory no. 5 on the grounds that it is vague and ambiguous, overly broad in time and scope, unduly burdensome, and it

Mozley, Finlayson
& Loggins LLP
A Limited Liability
Partnership
1050 Crown Pointe Parkway
Suite 1500
Atlanta, Georgia 30338

-4-

seeks information that is irrelevant and is not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving these objections, as it relates to the 2018 RAM 2500, pursuant to O.C.G.A. § 9-11-33(c), responsive information may be derived or ascertained from the document that CarMax has produced in response to plaintiff's requests for production. (Bates No. CARMAX 001).

6.

Identify all inspections, evaluations, or assessments performed on the Subject Vehicle prior to sale.

**RESPONSE:**   With respect to the sale of the 2018 RAM 2500 to plaintiff, pursuant to O.C.G.A. § 9-11-33(c), responsive information may be derived or ascertained from the documents that CarMax has produced in response to plaintiff's requests for production. (Bates Nos. CARMAX 001 - CARMAX 009).

7.

Describe the findings from inspections conducted prior to sale.

**RESPONSE:**   CarMax objects to interrogatory no. 7 on the grounds that it is vague and ambiguous, overly broad in time and scope, unduly burdensome, and it seeks information that is irrelevant and is not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving these objections, as it relates to the 2018 RAM 2500, pursuant to O.C.G.A. § 9-11-33(c), responsive information may be derived or ascertained from the documents that CarMax has produced in response to plaintiff's requests for production. (Bates Nos. CARMAX 001 - CARMAX 009).

Mozley, Finlayson
& Loggins LLP
A Limited Liability
Partnership
1050 Crown Pointe Parkway
Suite 1500
Atlanta, Georgia 30338

-5-

8.

Identify all documents, photographs, or records referencing rust or undercarriage condition prior to sale.

**RESPONSE:**       CarMax objects to interrogatory no. 8 on the grounds that it is vague and ambiguous, overly broad in time and scope, unduly burdensome, and it seeks information that is irrelevant and is not reasonably calculated to lead to the discovery of admissible evidence.  Subject to and without waiving these objections, as it relates to the sale of the 2018 RAM 2500 to plaintiff, pursuant to O.C.G.A. § 9-11-33(c), responsive information may be derived or ascertained from the documents that CarMax has produced in response to plaintiff's requests for production.  (Bates Nos. CARMAX 001 – CARMAX 009).  Discovery is ongoing, and CarMax reserves the right to supplement this response to the extent permitted by the Georgia Civil Practice Act.

9.

Describe your policies for identifying rust or corrosion.

**RESPONSE:**       CarMax objects to providing confidential, proprietary, and competitively sensitive or trade secret materials and/or information that may be responsive to interrogatory no. 9 absent the entry of an appropriate protective order protecting the confidentiality of responsive information and documents, and limiting their use to the subject litigation.  Subject to and without waiving this objection, upon the entry of an appropriate protective order of confidentiality, CarMax will produce

Mozley, Finlayson
& Loggins LLP
A Limited Liability
Partnership
1050 Crown Pointe Parkway
Suite 1500
Atlanta, Georgia 30338

-6-

responsive information and/or confidential documents from which information responsive to interrogatory no. 9 may be derived or ascertained.

10.

Describe your criteria for distinguishing cosmetic rust from structural rust.

**RESPONSE:** CarMax objects to providing confidential, proprietary, and competitively sensitive or trade secret materials and/or information that may be responsive to interrogatory no. 10 absent the entry of an appropriate protective order protecting the confidentiality of responsive information and documents, and limiting their use to the subject litigation. Subject to and without waiving this objection, upon the entry of an appropriate protective order of confidentiality, CarMax will produce responsive information and/or confidential documents from which information responsive to interrogatory no. 10 may be derived or ascertained.

11.

Describe your policies regarding disclosure of rust or corrosion to customers.

**RESPONSE:** CarMax objects to providing confidential, proprietary, and competitively sensitive or trade secret materials and/or information that may be responsive to interrogatory no. 11 absent the entry of an appropriate protective order protecting the confidentiality of responsive information and documents, and limiting their use to the subject litigation. Subject to and without waiving this objection, upon the entry of an appropriate protective order of confidentiality, CarMax will produce responsive information and/or confidential documents from which information responsive to interrogatory no. 11 may be derived or ascertained.

Mozley, Finlayson
& Loggins LLP
A Limited Liability
Partnership
1050 Crown Pointe Parkway
Suite 1500
Atlanta, Georgia 30338

-7-

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

DAVID J. CERNANCE,

　　　Plaintiff,

vs.

CARMAX AUTO SUPERSTORES, INC.,

　　　Defendant.

CIVIL ACTION FILE
NO.:  2:25-CV-00387-SCJ

## JOINT CONSENT MOTION FOR PROTECTIVE ORDER OF CONFIDENTIALITY

COME NOW pro se plaintiff DAVID JOSEPH CERNANCE and defendant

CARMAX AUTO SUPERSTORES, INC. and hereby move this Honorable Court

to enter the attached proposed Protective Order of Confidentialty (Exhibit A).

This _____ day of March, 2026.

_____
David Joseph Cernance
Pro Se Plaintiff

616 Hickory Cove Road
Jasper, Georgia 30143
davidcernance@gmail.com

_____
John L. McKinley, Jr.
Georgia Bar No. 495513
Sean E. Boyd
Georgia Bar No. 302874

-2-

Attorneys for Defendant
CarMax Auto Superstores, Inc.

MOZLEY, FINLAYSON & LOGGINS LLP
1050 Crown Pointe Parkway, Suite 1500
Atlanta, Georgia 30338-7704
(404) 256-0700 (telephone)
(404) 250-9355 (facsimile)
jmckinley@mfllaw.com
sboyd@mfllaw.com

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

DAVID J. CERNANCE,

        Plaintiff,

vs.

CARMAX AUTO SUPERSTORES, INC.,

        Defendant.

CIVIL ACTION FILE
NO.:  2:25-CV-00387-SCJ

**[PROPOSED]**
**PROTECTIVE ORDER OF CONFIDENTIALITY**

IT IS HEREBY ORDERED that the documents and other information, including the substance and content thereof, designated by defendant CARMAX AUTO SUPERSTORES, INC. (hereinafter, "CarMax"), as confidential and proprietary and produced by CarMax in response to any formal or informal requests for discovery in the present litigation shall be subject to the terms of this Protective Order of Confidentiality as set forth below.

IT IS FURTHER ORDERED AS FOLLOWS:

1.

For purposes of this Protective Order of Confidentiality, "Confidential Information" means any documents and written responses provided by CarMax in response to any formal or informal discovery requests which CarMax designates as

confidential by so indicating on the face of the writing with language reading "CONFIDENTIAL INFORMATION PURSUANT TO PROTECTIVE ORDER OF CONFIDENTIALITY" or with similar language.

2.

All Confidential Information may be used for the purposes of this lawsuit only.

3.

Except as specifically set out below, the parties and their attorneys shall not divulge or otherwise disclose the substance or existence of the documents or other information designated as Confidential Information, or any copies, prints, negatives, or summaries thereof, to any entity or person with the exception of the employees of parties' counsel and the experts and consultants employed by the parties in connection with the preparation and trial of this action.

4.

Before any such Confidential Information, or substance or summary thereof, shall be disclosed to experts or consultants retained by any party, the party or their attorney(s) shall tender a copy of this Protective Order of Confidentiality to each such person or entity in order that each such person or entity to whom the disclosure of Confidential Information is made shall be on notice and fully informed that the contents and substances of this Protective Order of

Confidentiality are, and are intended to be, equally binding upon it, him, or her, as well as upon all parties to this lawsuit and their counsel. Each expert and consultant employed by the parties to this lawsuit in connection with the preparation and trial of this action to whom Confidential Information will be disseminated will be required, prior to any such dissemination, to receive, read, and sign a copy of this Protective Order of Confidentiality and Exhibit 1 hereto, and to agree to be bound by the terms of this Protective Order of Confidentiality and to be personally subject to the jurisdiction of this Court for the purposes of enforcement hereof by the execution of a copy of Exhibit 1 hereto.

5.

All Confidential Information and any pleading, motion, or other paper filed with the Court disclosing any such Confidential Information shall be filed under seal and shall be kept under seal until further order of the Court. However, said information shall continue to be available to the Court and to such persons permitted access to the Confidential Information under this Protective Order of Confidentiality. Where possible, only the confidential portions of filings with the Court shall be filed under seal.

6.

Nothing in this Protective Order of Confidentiality shall be deemed a waiver of a party's rights (a) to oppose any motion by CarMax for a Protective Order of

-3-

Confidentiality, or (b) to oppose any objection by CarMax to the production of information, documents, or other materials in response to requests for discovery in this litigation.

7.

Nothing in this Protective Order of Confidentiality shall be deemed a waiver of CarMax's right to (a) oppose discovery on grounds other than that the documents and information sought constitute or contain confidential information; or (b) object to the admission in evidence, at trial of this action, of any Confidential Information.

8.

Nothing in this Protective Order of Confidentiality shall be deemed an admission by CarMax about the relevancy or admissibility of any Confidential Information. However, the production of Confidential Information by CarMax in response to requests for discovery in this litigation shall constitute an admission as to the authenticity of such materials which were generated in the ordinary course of business by CarMax.

9.

The inadvertent production of or failure to designate material as confidential shall not constitute a waiver of confidentiality, and the producing party may thereafter designate the same as Confidential Information.

-4-

10.

All materials designated as Confidential Information shall be treated as confidential pursuant to the terms of the Protective Order of Confidentiality until further order of this Court. A party may challenge the designation of any material as confidential or otherwise apply to the Court by motion at any time during the pendency of this case for a ruling upon good cause shown that materials not be treated as confidential. The party asserting the confidential protection should have the burden of proving that the document qualifies as confidential. Should a party make such a challenge and the Court rules that the challenged materials are not entitled to protection as Confidential Information, CarMax shall have ten (10) days after exhausting all appeals and petitions for relief to provide plaintiff with duplicate copies of the challenged materials free of any language indicating that they are subject to this Protective Order of Confidentiality.

11.

If a party intends to introduce at trial any Confidential Information into evidence, said party shall provide notice of such intention to the Court and to CarMax during the exchange of exhibit lists. The identification of Confidential Information in a party's exhibit lists and/or in any pretrial order shall constitute compliance with this provision.

-5-

12.

Nothing herein shall prevent any party from using the Confidential Information in connection with any trial, hearing, or other public proceeding in this matter or from seeking further protection with respect to the use of any such Confidential Information in connection with such trial, hearing, or other public proceeding in this matter.

13.

Each party or party's counsel, as applicable, shall maintain a list of the names of all persons to whom Confidential Information is disclosed until such time as all materials covered by this Protective Order of Confidentiality are returned to CarMax's counsel as set forth herein.

14.

Following the completion of the trial and appeals, if any, in this action, or at the satisfaction of any judgment, or upon conclusion of any settlement, if any, each party's counsel shall destroy, or CarMax's counsel will retrieve, all Confidential Information and any and all copies, translations, prints, negatives, and summaries thereof, including any and all copies, translations, prints, negatives, and summaries in the possession of each party, their experts, and their consultants.

SO ORDERED, this _____ day of _____, 2026.

BY THE COURT:

_____
HONORABLE STEVE C. JONES
Judge, United States District Court
Northern District of Georgia

**THIS PROTECTIVE ORDER OF CONFIDENTIALITY PREPARED BY:**

_____
John L. McKinley, Jr.
Georgia Bar No. 495513
Sean E. Boyd
Georgia Bar No. 302874

Attorneys for Defendant
CarMax Auto Superstores, Inc.

MOZLEY, FINLAYSON & LOGGINS LLP
1050 Crown Pointe Parkway, Suite 1500
Atlanta, Georgia 30338-7704
(404) 256-0700 (telephone)
(404) 250-9355 (facsimile)
jmckinley@mfllaw.com
sboyd@mfllaw.com

**THIS PROTECTIVE ORDER OF CONFIDENTIALITY CONSENTED TO BY:**

_____
David Joseph Cernance
Pro Se Plaintiff

616 Hickory Cove Road
Jasper, Georgia 30143
davidcernance@gmail.com

-7-

**EXHIBIT 1**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | |
|---|---|
| DAVID J. CERNANCE,<br><br>Plaintiff,<br><br>vs.<br><br>CARMAX AUTO SUPERSTORES, INC.,<br><br>Defendant. | CIVIL ACTION FILE<br>NO.: 2:25-CV-00387-SCJ |

**ACKNOWLEDGMENT OF RECEIPT OF PROTECTIVE ORDER OF CONFIDENTIALITY AND AGREEMENT TO BE BOUND THEREBY**

I acknowledge receipt of a copy of the PROTECTIVE ORDER OF CONFIDENTIALITY dated ______________________, 2026, and I agree that I will be bound by its provisions with respect to any information provided to me pursuant to the terms of this Agreement. I agree that if I receive any document marked "CONFIDENTIAL INFORMATION," I will not make any copies thereof without the written consent of the party furnishing such document in discovery, and I will not discuss the document with anyone other than counsel for a party or others necessary for the purpose of prosecuting or defending the case. I further agree to return any CONFIDENTIAL INFORMATION at the close of this litigation pursuant to this Protective Order of Confidentiality. I hereby consent to

the personal jurisdiction of the United States District Court for the Northern District of Georgia, Gainesville Division, with regard to any matter relating to or arising out of the Agreement and I acknowledge that I have read the Agreement and understand its terms.  I further acknowledge that I may be subjected to sanctions by the Court if I fail to comply with the Order.

This _____ day of _____, 202___.

_____

Name: _____

Title: _____

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

DAVID J. CERNANCE,

Plaintiff,

vs.

CARMAX AUTO SUPERSTORES, INC.,

Defendant.

CIVIL ACTION FILE
NO.:  2:25-CV-00387-SCJ

## CERTIFICATE OF SERVICE AND TYPE SIZE COMPLIANCE

This is to certify that on this date, I electronically filed the foregoing *Joint Consent Motion for Protective Order of Confidentiality* with the Clerk of Court using the CM/ECF system, which will automatically send notification of such filing, as well as sent a copy via statutory electronic service, to the following:

David Joseph Carnance
616 Hickory Cove Road
Jasper, Georgia 30143
davidcernance@gmail.com

Pursuant to Local Rule 5.1, NDGa., the foregoing motion is prepared in Times New Roman, 14 point.

This 12th day of March, 2026.

/s/ Sean E. Boyd
Sean E. Boyd
Georgia Bar No. 302874

MOZLEY, FINLAYSON & LOGGINS LLP
1050 Crown Pointe Parkway, Suite 1500
Atlanta, Georgia 30338-7704
(404) 256-0700 (telephone)
(404) 250-9355 (facsimile)
sboyd@mfllaw.com

**EXHIBIT G**
CarMax Internal Salesforce Entry Stating:

"The customer is upset that he took the car to the dealership and discovered rust that's preventing service."

Purpose:

- Demonstrates CarMax's pre-litigation knowledge of service-affecting rust.

# CCS
CARMAX COMPLIANCE SERVICES

## Salesforce Case Notes

Data sourced from Salesforce Case Data
Action date/time are for that action except for case resolution options presented which is set to the last case update
To search an item or list of items, enter the case number in the parameter field
For item lists, enter them line by line with no commas (should be able to copy /paste direct from excel column values)

Print Date: 1/27/2026 2:43:26 PM

Prepared By: Carmax Compliance Service-Analytics

Having Access Issues? [click here]

CONFIDENTIAL   Do not copy or forward without authorization

| CASE ID CS | ACTION DT | ACTION TS | CASE NUMBER | ORIGIN | CONTACT NAME | ACCOUNT NAME | TYPE UPDATE | OLD VALUE | NEW VALUE |
|---|---|---|---|---|---|---|---|---|---|
| 500PW00000akviZYAQ | 09/12/2025 | 12:03:35 | 937783 | Phone | David Cernance | David Cernance | Case Description | | The customer is upset that he took the car to the dealership and discovered rust that's preventing service. |
| 500PW00000akviZYAQ | 09/12/2025 | 12:03:35 | 937783 | Phone | David Cernance | David Cernance | Next Follow Up | | 2025-09-13 |
| 500PW00000akviZYAQ | 09/12/2025 | 12:03:35 | 937783 | Phone | David Cernance | David Cernance | Owner | Cassandra Riley | Case Routing Queue |
| 500PW00000akviZYAQ | 09/12/2025 | 12:03:35 | 937783 | Phone | David Cernance | David Cernance | Case Subject | | Service Concerns |
| 500PW00000akviZYAQ | 09/12/2025 | 12:03:35 | 937783 | Phone | David Cernance | David Cernance | Vehicle Details | | 2018 Ram 1500 | 3C6MR5AJ6JG347736 | 25619443 CURRENT MILES | 17k DOP MILES | 5/16/2024 - 7,807 |
| 500PW00000akviZYAQ | 09/12/2025 | 12:03:35 | 937783 | Phone | David Cernance | David Cernance | Created | | |
| 500PW00000akviZYAQ | 09/12/2025 | 12:04:05 | 937783 | Phone | David Cernance | David Cernance | Contact | | David Cernance |
| 500PW00000akviZYAQ | 09/12/2025 | 13:06:41 | 937783 | Phone | David Cernance | David Cernance | Owner | Case Routing Queue | David Willis |
| 500PW00000akviZYAQ | 09/12/2025 | 20:23:55 | 937783 | Phone | David Cernance | David Cernance | Store Owner | | Kimya Sanders |
| 500PW00000akviZYAQ | 09/12/2025 | 20:26:58 | 937783 | Phone | David Cernance | David Cernance | Feed Comment Reply | | Will partner with @Tony Rouse and @Garrett Cuylear on Monday |

Internal Use Only

CARMAX 087

**EXHIBIT H**
CarMax Better Business Bureau Response.

Purpose:

- Inspection allegedly occurred May 21, 2024.
- Rust allegedly determined to be cosmetic.
- Findings allegedly communicated to Plaintiff.

**Messages/Communication**

**From:** BBB BBB Serving Central Virginia, Inc.
**To:** Consumer
**Sent:** 09/19/2025
**Subject:** Complaint has been sent to the business

David Cernance
616 Hickory Cove Road
Jasper GA 30143


Dear David Cernance

Thank you for contacting Better Business Bureau for help with your complaint.

Your complaint was submitted on 9/19/2025 against CarMax , Inc.. Your complaint was assigned ID 23908608.

While we strive to reach a resolution within 30 to 45 days, please be aware that companies with a large customer base may take longer than our anticipated timeframe.

Sincerely,


Makenzi Meyer
Better Business Bureau



Better Business Bureau

4800 Cox Road Suite 101
Glen Allen VA 23060
(804) 648-0016
www.bbb.org/richmond

**Case #:** 23908608

**Sent to Business on:** 09/19/2025

**Business Info:**
CarMax , Inc.
12800 Tuckahoe Creek Pkwy
Richmond, VA 23238
8047470422

**Consumer Info:**
Cernance, David
616 Hickory Cove Road
Jasper, GA 30143
8175707097
DAVIDCERNANCE@GMAIL.COM

**Nature of the Complaint:** Guarantee Or Warranty Issues

**Consumer's Original Complaint:**
On May 16, 2024, I purchased a 2018 truck from CarMax for $45,000. The vehicle was advertised and sold as being in "excellent condition." At no point during the sale process was I informed of any rust damage or structural concerns. After customizing the truck with graphics for my business, I experienced mechanical failure. Upon inspection at Tutton CDJR Jeep RAM in Jasper, Georgia (Ref. No. 23895), it was confirmed that the failure was caused by extensive rust underneath the vehicle—rust that had compromised critical components.

CarMax reimbursed me for the mechanical repair, which I appreciate. However, they refused to address the underlying rust damage or outsource the necessary remediation. When I asked whether the inspection was conducted by an independent third party, I was told it was internal to CarMax. This raises serious concerns about the objectivity of their inspection process and the accuracy of their "excellent condition" claim.

On September 19, 2025, I made a verbal demand for resolution directly to CarMax Customer Relations Analyst David (ID #262215), who stated he was the final authority and that CarMax would not be offering further assistance. This response confirms CarMax's refusal to take responsibility for the undisclosed rust damage.

Had I known about the rust damage, I would not have purchased the vehicle at that price, nor invested in branding it for my business. I am requesting that CarMax be held accountable and required to cover the full cost of rust remediation and any related structural repairs.

Thank you for your attention to this matter.

Sincerely, David J. Cernance 616 Hickory Cove Rd Jasper, GA 30143 CarMax Case #00937783

**Consumer's Desired Resolution:**
Repair

**From:** BBB BBB Serving Central Virginia, Inc.
**To:** Consumer
**Sent:** 09/23/2025
**Subject:** Message received from the business about your complaint

David Cernance
616 Hickory Cove Road
Jasper GA 30143

Dear David Cernance

This message is in regard to your complaint submitted on 9/19/2025 against CarMax, Inc.. Your complaint was assigned ID 23908608.

BBB is a private nonprofit corporation dedicated to promoting an ethical marketplace. Our complaint handling process is provided to the public, free of charge, through the support of accredited businesses.

Enclosed is the business's reply to your complaint. If the reply includes an offer, please contact CarMax, Inc. or Better Business Bureau to make any necessary arrangements.

**What happens now?**

If the company's reply does not resolve the issue, please let us know, within 7 days, of the issues that remain unresolved. If we do not receive your rejection within 7 days, your complaint will close "ANSWERED" stating BBB has not heard back from the consumer as to their satisfaction. *Please know that BBB is always available to discuss your case and will accept additional information even after the 7 day timeframe.* Information can be sent to us via U.S. mail or email to complaints@richmond.bbb.org.

If you received this complaint via Postal Mail, you may respond online using the link below or respond by mail using the address above.
To access/respond to this complaint online:
Go to:
Enter the following code: 23908608-A41D1

**What should I include in my acceptance of the business's reply?**

There is a default letter already provided indicating you accept the business's reply. If you wish, you may update it before sending it.

**What should I include in my rejection of the business's reply?**

Please provide a written rebuttal with actionable items that the company has not already addressed or statements in the business's reply that you are disputing.

**I have rejected the business's reply. What can I expect to happen next?**

Once we receive your written response, we will review the information to determine if we are able to assist further. If we are able to help, we will send your rejection to the business. If we are unable to continue, your complaint will be closed as "ANSWERED" recognizing your dissatisfaction and reported publicly for 3 years.

## What information will be posted to the website?

Please understand that the text of your complaint content will be publicly posted on the BBB web site (BBB reserves the right to not post in accordance with BBB policy). By submitting your comments, you are representing that it is a truthful account of your experience. BBB may edit the complaint to protect privacy rights and to remove inappropriate language.

Regards,

Makenzi Meyer | Better Business Bureau

**MESSAGE FROM BUSINESS:**

September 23rd, 2025

Operations Department
720 Moorefield Park Drive, Suite 300
Richmond, Virginia 23236

Re: David Cernance
Complaint ID: 23908608
2018 RAM 2500 6.4L ("the Vehicle"), VIN: 3C6MR5AJ6JG347736

Dear Mrs. Jennifer Via:

Thank you for forwarding the complaint dated 9/19/2025, regarding the Vehicle David purchased at the CarMax location in Roswell, GA ("CarMax") on or about 5/16/2024. In the complaint, David expressed concerns regarding undercarriage rust on the Vehicle and requested that CarMax address these concerns at no cost.

According to CarMax business records, on or about 9/12/2025, David spoke with CarMax Customer Relations in Richmond, VA ("CarMax Customer Relations") regarding their concerns mentioned in the Better Business Bureau complaint. CarMax Customer Relations delivered the resolution on or about 9/19/2025.

There has been no change in the previous resolution delivered to David.

CarMax appreciates the opportunity to respond to David's concerns.

Sincerely

Nahomy
Analyst, Customer Relations

**From:** Consumer David Cernance
**To:** BBB
**Sent:** 09/24/2025
**Subject:** I do not accept the offer made by the business to resolve this complaint

September 24, 2025 Better Business Bureau Serving Metro Atlanta, Athens & Northeast Georgia

Re: Formal Rebuttal to CarMax Response – Complaint ID: 23908608  Vehicle: 2018 RAM 2500 6.4L | VIN: 3C6MR5AJ6JG347736

To Whom It May Concern,

I am submitting this formal rebuttal in response to CarMax's reply dated September 23, 2025, regarding my complaint concerning the sale of the above-referenced vehicle with undisclosed undercarriage rust. CarMax's assertion that a "resolution" was provided on or about September 19, 2025 is both misleading and factually inaccurate. No resolution—defined as a substantive offer of remediation, compensation, or corrective action—was ever extended. CarMax has not offered any remedy whatsoever. Instead, they have categorically denied all responsibility and rejected every reasonable request I submitted, including inspection, remediation, or financial adjustment.

Their statement to the BBB implies that some form of resolution was offered and accepted or declined. This is a misrepresentation. The only "offer" made was a blanket refusal to assist, which they now attempt to reframe as a resolution. This tactic is deceptive and undermines the credibility of the BBB process. If CarMax stands by the claim that a resolution was offered, I respectfully request that they specify exactly what remedy they believe was proposed. As of this writing, no such remedy has been communicated to me.

I have retained all correspondence, which clearly demonstrates that CarMax has taken no action beyond denying responsibility. I am actively preparing to escalate this matter to the Georgia Department of Law, the Office of the Attorney General, and, if necessary, pursue civil remedies.

I respectfully request that this rebuttal be added to the complaint record and that CarMax's response be reviewed for accuracy and good faith participation.

Respectfully,

David Joseph Cernance

616 Hickory Cove Rd.
Jasper, GA 30143

Office: 706-438-8800
Cell: 817-570-7097
Email: davidcernance@gmail.com

**From:** BBB BBB Serving Central Virginia, Inc.
**To:** Consumer
**Sent:** 09/25/2025
**Subject:** Message received from the business about your complaint

David Cernance
616 Hickory Cove Road
Jasper GA 30143

Dear David Cernance

This message is in regard to your complaint submitted on 9/19/2025 against CarMax, Inc.. Your complaint was assigned ID 23908608.

BBB is a private nonprofit corporation dedicated to promoting an ethical marketplace. Our complaint handling process is provided to the public, free of charge, through the support of accredited businesses.

Enclosed is the business's reply to your complaint. If the reply includes an offer, please contact CarMax, Inc. or Better Business Bureau to make any necessary arrangements.

**What happens now?**
If the company's reply does not resolve the issue, please let us know, within 7 days, of the issues that remain unresolved. If we do not receive your rejection within 7 days, your complaint will close "ANSWERED" stating BBB has not heard back from the consumer as to their satisfaction. *Please know that BBB is always available to discuss your case and will accept additional information even after the 7 day timeframe.* Information can be sent to us via U.S. mail or email to complaints@richmond.bbb.org.

If you received this complaint via Postal Mail, you may respond online using the link below or respond by mail using the address above.
To access/respond to this complaint online:
Go to:
Enter the following code: 23908608-A41D1

**What should I include in my acceptance of the business's reply?**
There is a default letter already provided indicating you accept the business's reply. If you wish, you may update it before sending it.

**What should I include in my rejection of the business's reply?**
Please provide a written rebuttal with actionable items that the company has not already addressed or statements in the business's reply that you are disputing.

**I have rejected the business's reply. What can I expect to happen next?**

Once we receive your written response, we will review the information to determine if we are able to assist further. If we are able to help, we will send your rejection to the business. If we are unable to continue, your complaint will be closed as "ANSWERED" recognizing your dissatisfaction and reported publicly for 3 years.

## What information will be posted to the website?

Please understand that the text of your complaint content will be publicly posted on the BBB web site (BBB reserves the right to not post in accordance with BBB policy). By submitting your comments, you are representing that it is a truthful account of your experience. BBB may edit the complaint to protect privacy rights and to remove inappropriate language.

Regards,

Makenzi Meyer | Better Business Bureau

**MESSAGE FROM BUSINESS:**

September 25th, 2025

Operations Department
720 Moorefield Park Drive, Suite 300
Richmond, Virginia 23236

Re: David Cernance
Complaint ID: 23908608
2018 RAM 2500 6.4L ("the Vehicle"), VIN: 3C6MR5AJ6JG347736

Dear Mrs. Jennifer Via:

We understand David Cernance disputes the resolution provided by CarMax Customer Relations located in Richmond, VA. CarMax has provided an explanation regarding the undercarriage rust on the Vehicle. Based on a review of David Cernance concerns and history, we continue to uphold the resolution shared on September 19th, 2025.

CarMax invites David Cernance to contact us with any questions or concerns regarding the resolution options. CarMax can be reached at 1-800-519-1511.

CarMax appreciates the opportunity to respond to this rebuttal for David Cernance.

Sincerely,

Nahomy
Analyst, Customer Relations

**From:** Consumer David Cernance
**To:** BBB
**Sent:** 09/26/2025
**Subject:** I do not accept the offer made by the business to resolve this complaint

September 26, 2025 Better Business Bureau Serving Metro Atlanta, Athens & Northeast Georgia

Re: Rebuttal to CarMax Response – Complaint ID: 23908608  2018 RAM 2500 6.4L, VIN: 3C6MR5AJ6JG347736

To Whom It May Concern,

CarMax's latest response dated September 25, 2025, once again refers to a "resolution shared" on September 19, 2025. However, they have failed—repeatedly—to articulate what that resolution actually is. This pattern of vague, noncommittal language suggests either a lack of comprehension by the responding analyst or a deliberate attempt to avoid accountability.

Let me be clear:
No resolution has ever been communicated to me in writing or verbally.
No remedy has been offered.
No acknowledgment of the undisclosed undercarriage rust has been made.

CarMax's refusal to specify what they are "upholding" is not only evasive—it borders on deceptive. If their so-called resolution is a blanket denial of responsibility, they should state that plainly. Instead, they continue to use generic phrasing that implies a resolution exists, when in fact, it does not.

This is not a matter of misunderstanding. It is a matter of deliberate obfuscation. CarMax has failed to disclose material damage prior to sale, and now refuses to acknowledge or address it. Their communications lack transparency, substance, and good faith.
I urge the BBB to recognize this pattern of avoidance and misrepresentation. I am prepared to escalate this matter to the Georgia Attorney General's Office and pursue legal remedies if CarMax continues to sidestep its obligations.
Sincerely,

David Joseph Cernance
616 Hickory Cove Rd.
Jasper, GA 30143

Office: 706-438-8800
Cell: 817-570-7097
Email: davidcernance@gmail.com

**From:** BBB BBB Serving Central Virginia, Inc.
**To:** Consumer
**Sent:** 10/01/2025
**Subject:** Message received from the business about your complaint

David Cernance
616 Hickory Cove Road
Jasper GA 30143


Dear David Cernance

This message is in regard to your complaint submitted on 9/19/2025 against CarMax , Inc.. Your complaint was assigned ID 23908608.

BBB is a private nonprofit corporation dedicated to promoting an ethical marketplace. Our complaint handling process is provided to the public, free of charge, through the support of accredited businesses.

Enclosed is the business's reply to your complaint. If the reply includes an offer, please contact CarMax , Inc. or Better Business Bureau to make any necessary arrangements.

**What happens now?**
If the company's reply does not resolve the issue, please let us know, within 7 days, of the issues that remain unresolved. If we do not receive your rejection within 7 days, your complaint will close "ANSWERED" stating BBB has not heard back from the consumer as to their satisfaction. *Please know that BBB is always available to discuss your case and will accept additional information even after the 7 day timeframe.* Information can be sent to us via U.S. mail or email to complaints@richmond.bbb.org.

> If you received this complaint via Postal Mail, you may respond online using the link below or respond by mail using the address above.
> To access/respond to this complaint online:
> Go to:
> Enter the following code: 23908608-A41D1

**What should I include in my acceptance of the business's reply?**
There is a default letter already provided indicating you accept the business's reply. If you wish, you may update it before sending it.

**What should I include in my rejection of the business's reply?**
Please provide a written rebuttal with actionable items that the company has not already addressed or statements in the business's reply that you are disputing.

**I have rejected the business's reply. What can I expect to happen next?**

Once we receive your written response, we will review the information to determine if we are able to assist further. If we are able to help, we will send your rejection to the business. If we are unable to continue, your complaint will be closed as "ANSWERED" recognizing your dissatisfaction and reported publicly for 3 years.

## What information will be posted to the website?

Please understand that the text of your complaint content will be publicly posted on the BBB web site (BBB reserves the right to not post in accordance with BBB policy). By submitting your comments, you are representing that it is a truthful account of your experience. BBB may edit the complaint to protect privacy rights and to remove inappropriate language.

Regards,

Makenzi Meyer | Better Business Bureau

**MESSAGE FROM BUSINESS:**

October 1st, 2025

Operations Department
720 Moorefield Park Drive, Suite 300
Richmond, Virginia 23236

Re: David Cernance
Complaint ID: 23908608
2018 RAM 2500 6.4L ("the Vehicle"), VIN: 3C6MR5AJ6JG347736

Dear Mrs. Jennifer Via:

Thank you for forwarding the rebuttal complaint dated September 26th, 2025, regarding the Vehicle David Cernance purchased at the CarMax location in Roswell, GA ("CarMax"), on or about May, 16th, 2024.

We understand David Cernance disputes the resolution provided by CarMax Customer Relations located in Richmond, VA. CarMax has provided an explanation regarding the undercarriage rust on the Vehicle. Based on a review of David Cernance concerns and history, we continue to uphold the resolution shared on September 19th, 2025. At this time, CarMax has confirmed the Vehicle undercarriage was inspected during an appointment on May 21, 2024, and it was determined that the rust present was cosmetic in nature. This review occurred within David Cernance Love Your Car Guarantee window, during which David Cernance was informed that the rust met our mechanical standards and had the opportunity to return the Vehicle if dissatisfied. Due to the time that has elapsed since the purchase and the previous review conducted to assess whether the underbody rust met CarMax standards at the time of sale, CarMax is unable to participate in covering the costs of remedial rust-removal methods.

CarMax invites David Cernance to contact us with any questions or concerns regarding the resolution options. CarMax can be reached at 1-800-519-1511.

CarMax appreciates the opportunity to respond to this rebuttal for David Cernance.

Sincerely,

Nahomy
Analyst, Customer Relations

**From:** Consumer David Cernance
**To:** BBB
**Sent:** 10/02/2025
**Subject:** I do not accept the offer made by the business to resolve this complaint

October 2, 2025

Better Business Bureau Serving Metro Atlanta, Athens & Northeast Georgia

Re: Rebuttal to CarMax Response – Complaint ID: 23908608  2018 RAM 2500 6.4L, VIN: 3C6MR5AJ6JG347736

To Whom It May Concern,
This correspondence continues my documented efforts to resolve the matter concerning the undisclosed undercarriage rust on the above-referenced vehicle purchased from CarMax Roswell on May 16, 2024.

I have made every reasonable attempt to settle this issue directly with CarMax, followed by filing a formal complaint through the Better Business Bureau. All communications are being preserved for potential litigation, which will be pursued if CarMax continues to deny a resolution that adequately addresses the damage they failed to disclose prior to sale.

The rust was only discovered after a serious mechanical malfunction, which required repair at Tutton Dodge. It was during that repair—not during any CarMax inspection—that the extent of the undercarriage rust was revealed. CarMax never disclosed this damage prior to sale, nor did they acknowledge it during the so-called inspection. Their claim that I was "informed" is unsupported and contradicts the actual timeline.

When I requested a replacement vehicle, CarMax refused, citing that the truck had already been modified and branded for business use. This rationale effectively voided any practical benefit of their "Love Your Car Guarantee" and left me without recourse.

To date, CarMax has:

Failed to disclose material damage prior to sale.
Denied responsibility for the concealed rust.
Refused to offer a refund, exchange, or repair.
Provided misleading and contradictory statements to the BBB.

If CarMax continues to deny a resolution that includes full remediation of the undisclosed damage, I will proceed with the following legal steps:
Filing a formal complaint with the Georgia Attorney General's Consumer Protection Division.
Submitting a claim under Georgia's Fair Business Practices Act for deceptive trade practices.
Initiating civil litigation in the appropriate Georgia court.

I remain committed to resolving this matter amicably, but I will not hesitate to escalate through formal legal channels if CarMax continues to avoid accountability.
Sincerely,

David Joseph Cernance

616 Hickory Cove Rd
Jasper, GA 30143

Office: 706-438-8800
Cell:   817-570-7097
Email: davidcernance@gmail.com

**From:** BBB BBB Serving Central Virginia, Inc.
**To:** Consumer
**Sent:** 10/02/2025
**Subject:** A message from your BBB

David Cernance
616 Hickory Cove Road
Jasper GA 30143

Dear David Cernance,

## This message is regarding Complaint ID # 23908608- CarMax , Inc.

Thank you for following up with BBB regarding your position in the above-mentioned dispute.

We understand you are NOT satisfied with the business's response, and have noted your dissatisfaction in our files. While we regret we were unable to reach your desired resolution, the business has provided BBB with its position. This matter is now closed in BBB files, and will appear in the company's BBB Business Review as: "Answered - the business addressed the issues within the complaint, but the consumer remains dissatisfied."

Please note, the text of your response may be publicly posted on BBB's website. BBB reserves the right to not post in accordance with BBB policy, and we may edit your response to protect privacy rights and to remove inappropriate language.

We appreciate the opportunity to be of service, and sincerely hope you visit BBB.org for pre-purchase information. Join us for a conversation hosted by Ignite Sparked by BBB.

Sincerely,

Makenzi Meyer
Better Business Bureau

**EXHIBIT I**
Tutton CDJR Repair Invoice.

Purpose:

- Fan clutch "rusted solid."
- Substantial rust and corrosion findings.
- Contradicts cosmetic-rust narrative.

Tutton CDJR

1050 Highway 515 South
Jasper GA 30143
S (706) 692-6512 P 706) 692-6921

# *Internal / Service Contract / Warranty Invoice*

| | |
|---|---|
| David Cernance | A/R Number: |
| 1075 W CHURCH ST | Customer Number: 86862 |
| JASPER, GA 301434024 | PO Number: |
| Phone (H): (817) 570-7097 | Auth Number: |

**Invoice Number**
**23895**

| | |
|---|---|
| Service Writer: Caleb Phillips | Printed: 08/15/2024 1:38 PM |
| Estimate Amount: $ | Copy # 0 |
| Terms & Conditions: | Date Opened: 08/07/24 |
| Type of Sale. Retail | Date Notified: 08/15/24 |
| | Date Delivered: 08/15/24 |
| | Date Complete: |

Phone (W)
Cell Phone (817) 570-7097
Email Addr Davidcernance@gmail.com

Year/Make/Model: 2018 RAM 2500 (6 4L)
VIN        3C6MR5AJ6 JG347736
License Number        Color:
Stock Number        Mileage In: 12932
Tag Number. CP        Mileage Out: 12945

**Customer**
**Signature X**

| DESCRIPTION | | COST | HRS or QTY | LIST or LABOR | EXT TOTAL | GRAND TOTAL |
|---|---|---|---|---|---|---|
| **1. Customer statement of problem** | SvcWtr: | | Job Modified: 08/07/24 4:42 PM | | | |

C/ Engine Performance Concern [THERE IS A ROARING OR AIR RUSHING SOUND FROM THE ENGINE COMPARTMENT AND ENGINE RPMS ARE SPORADIC.]

*1 -- Cause / Action to Take*
Engine cooling fan clutch rusted solid, not releasing.

*1 -- Correction / Action Taken*
Cold start vehicle Sounds normal on startup. Scan vehicle. No codes present. Perform visual inspection under the hood. Nothing obvious found on initial inspection. Vehicle has substantial rust and corrosion on meatl components under the hood. Speak with advisor on concern, after calling the customer, found that noise is while driving vehicle. Perform test drive of vehicle. During test drive, found engine cooling fan is extremely loud and seems directly related to RPM. Perform inspection of fan assembly, found fan assembly rusted together solid. Can use fan to turn over engine by hand, no release of the clutch part of the fan. Will require substantial time, if even possible, to remove fan clutch from waterpump. Using penetrating oil and heat several different times, was able to extract bolts and free the clutch from waterpump hub without damage to pump. Install new fan clutch and perform test drive to verify repair. Vehicle is operating as designed at this time. FIDELITY AUTH W0023307A / TOTAL AUTH $729.29 / SEND TO: payme@jmagroup.com

COST 1025      942.03

| | Warranty ID | Tech | | Iop | Act Hr | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Diag | In: 12 AUG 24 09:0612 | Out: 12 AUG 24 10:0912 | | | 1.05 | | | | |
| | | 1025 Adam Ewing | | 1 | 1.05 | 225.00 | 4.50 | 209.34 | 942.03 |

| Iop | Part Number | Failed | Description | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 1 | 68194962AA | | FAN CLUTCH | | | 208 | 1 | 416.00 | 416.00 |

Sub Total Parts    208.00
SubTotal Job # 1        416.00
        1358.03

**2. Customer statement of problem**        SvcWtr:        Job Modified: 08/07/24 4:42 PM
C/ PERFORM MULTI POINT INSPECTION

*1 -- Cause / Action to Take*
complimentary

*1 -- Correction / Action Taken*
inspection completed

Sub Total Parts    0.00        0.00
SubTotal Job # 2        0.00
        0.00

Tutton CDJR

**Internal / Service Contract / Warranty Invoice**

1050 Highway 515 South
Jasper  GA  30143
S (706) 692-6512 P 706) 692-6921

2

| David Cernance | |
|---|---|
| 1075 W CHURCH ST | |
| JASPER, GA  301434024 | |
| Phone (H). (817) 570-7097 | |
| Phone (W) | |
| Cell Phone (817) 570-7097 | |
| Email Addr Davidcernance@gmail.com | |
| Year/Make/Model: 2018 RAM 2500 (6.4L) | |
| VIN          3C6MR5AJ6 JG347736 | |
| License Number              Color: | |
| Stock Number          Mileage In    12932 | |
| Tag Number    CP    Mileage Out  12945 | |

A/R Number:
Customer Number:    86862
PO Number:
Auth Number:

Service Writer:    Caleb Phillips
Estimate Amount:    $
Terms & Conditions:
Type of Sale:    Retail

**Customer Signature X**

Invoice Number
**23895**

Printed:  08/15/2024  1 38 PM
Copy #          0
Date Opened:    08/07/24
Date Notified:    08/15/24
Date Delivered: 08/15/24
Date Complete:

| DESCRIPTION | COST | HRS or QTY | LIST or LABOR | EXT TOTAL | GRAND TOTAL |
|---|---|---|---|---|---|
| Miscellaneous Charges and Deductions For All Jobs | | | | | |
| Shop supplies | | | 0.00 | | 69.99 |
| Payment Notes | | | | | |

| Internal | | | Service Contract | | | Warranty | | | Customer Pay | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| COST | Description | Retail | COST | Description | Retail | COST | Description | Retail | COST | Description | Retail |
| 0.00 | Labor | 0.00 | 0.00 | Labor | 0.00 | 0.00 | Labor | 0.00 | 225.00 | Labor | 942.03 |
| 0.00 | Parts | 0.00 | 0.00 | Parts | 0.00 | 0.00 | Parts | 0.00 | 208.00 | Parts | 416.00 |
| 0.00 | Sublet | 0.00 | 0.00 | Sublet | 0.00 | 0.00 | Sublet | 0.00 | 0.00 | Sublet | 0.00 |
| | Freight | 0.00 | | Freight | 0.00 | | Freight | 0.00 | | | |
| | Car Rental | 0.00 | | Car Rental | 0.00 | | Car Rental | 0.00 | | Freight | 0.00 |
| | Spec Tax | 0.00 | | Deductible | 0.00 | | Deductible | 0.00 | | Car Rental | 0.00 |
| | HazMat | 0.00 | | Spec Tax | 0.00 | | Spec Tax | 0.00 | | Deductible | 0.00 |
| | Tax | 0.00 | | Haz Mat | 0.00 | | Haz Mat | 0.00 | | Spec Tax | 0.00 |
| | Co-pay | 0.00 | | Tax | 0.00 | | SisTax | 0.00 | | Haz Mat | 0.00 |
| | Charge $ | 0.00 | | Charge $ | 0.00 | | Charge $ | 0.00 | | Sls Tax | 34.02 |
| | Misc | 0.00 | | Misc | 0.00 | | Misc | 0.00 | | Misc | 69.99 |
| | Balance | 0.00 | | Balance | 0.00 | | Balance | 0.00 | | Amt Due | 1,462.04 |

# TUTTON CDJR
CHRYSLER Jeep RAM

**Tutton CDJR**
1050 Highway 515 South
Jasper, GA 30143
Service (706)692-6512 • Parts (706)692-6921

Page

| | |
|---|---|
| David Cernance | A/R Number: |
| 1075 W CHURCH ST | Customer Number: 86862 |
| JASPER, GA 301434024 | PO Number: |
| Phone (H) (817) 570-7097   Phone (W): | Auth Number: |
| Phone (C) (817) 570-7097   Phone Oth: | Service Writer:   Caleb Phillips |
| Email:   Davidcernance@gmail.com | Estimate Amount   $ 177.36 |
| Year/Make/Model: 2018 RAM 2500 (6.4L) | Terms & Conditions: |
| VIN   3C6MR5AJ6 JG347736 | Type of Sale:   Retail |
| License Number   Color | |
| Stock Number | Customer |
| Tag Number   CP   Mileage In   12932 | Signature |
| Mileage Out  12945 | |

| | |
|---|---|
| Inv. Num   **23895** | |
| Printed:  AUG 15 24 1:37 PM | |
| Copy #   2 | |
| Date Opened:   08/07/24 | |
| Date Notified:   08/15/24 | |
| Date Delivered: 08/15/24 | |
| Date Complete: | |

Description

| Description | QtyOrd | Qty Del | Price | Ext Total | Grand Total |
|---|---|---|---|---|---|

## 1. Customer statement of problem

Engine Performance Concern [THERE IS A ROARING OR AIR RUSHING SOUND FROM THE ENGINE COMPARTMENT AND ENGINE RPMS ARE SPORADIC.]

*1 -- Cause/Action to Take*
DIAG - Engine cooling fan clutch rusted solid, not releasing.
*1 -- Correction/Action Taken*

1025

Cold start vehicle. Sounds normal on startup. Scan vehicle. No codes present. Perform visual inspection under the hood. Nothing obvious found on initial inspection. Vehicle has substantial rust and corrossion on meatl components under the hood. Speak with advisor on concern, after calling the customer, found that noise is while driving vehicle. Perform test drive of vehicle. During test drive, found engine cooling fan is extremely loud and seems directly related to RPM. Perform inspection of fan assembly, found fan assembly rusted together solid. Can use fan to turn over engine by hand, no release of the clutch part of the fan. Will require substantial time, if even possible, to remove fan clutch from waterpump. Using penetrating oil and heat several different times, was able to extract bolts and free the clutch from waterpump hub without damage to pump. Install new fan clutch and perform test drive to verify repair. Vehicle is operating as designed at this time. FIDELITY AUTH W0023307A / TOTAL AUTH $729.29 / SEND TO: payme@jmagroup. com

942.03

| Part Number | Failed | Description | | | | |
|---|---|---|---|---|---|---|
| 68194962AA | | FAN CLUTCH | 1 | 1 | 416.00 | 416.00 |

Sub Total Parts                                                                          416.00
SubTotal Job # 1                                                                        1358.03

## 2. Customer statement of problem

PERFORM MULTI POINT INSPECTION
*1 -- Cause/Action to Take*
MPI - complimentary
*1 -- Correction/Action Taken*
inspection completed

0.00



**Tutton CDJR**
1050 Highway 515 South
Jasper, GA 30143
Service (706)692-6512 • Parts (706)692-6921

Page 2

| David Cernance | A/R Number: | Inv. Num **23895** |
|---|---|---|
| 1075 W CHURCH ST | Customer Number: 86862 | Printed: AUG 15 24 1:37 PM |
| JASPER, GA 301434024 | PO Number: | Copy # 2 |
| Phone (H): (817) 570-7097  Phone (W): | Auth Number: | Date Opened: 08/07/24 |
| Phone (C) (817) 570-7097  Phone Oth: | Service Writer: Caleb Phillips | Date Notified: 08/15/24 |
| Email  Davidcernance@gmail.com | Estimate Amount: $ 177.36 | Date Delivered: 08/15/24 |
| Year/Make/Model 2018 RAM 2500 (6.4L) | Terms & Conditions: | Date Complete: |
| VIN  3C6MR5AJ6 JG347736 | Type of Sale: Retail | |
| License Number  Color: | | |
| Stock Number  Mileage In: 12932 | **Customer** | |
| Tag Number  CP  Mileage Out: 12945 | **Signature** | |

| Description | QtyOrd | Qty Del | Price | Ext Total | Grand Total |
|---|---|---|---|---|---|
| Sub Total Parts | | | | | 0.00 |
| SubTotal Job # 2 | | | | | 0.00 |

Miscellaneous Charges and Deductions For All Jobs
Shop supplies

69.99

Disclaimer of Warranties: No warranty on high performance work, parts or labor. Any warranties on the products sold hereby are those made by the manufacturer. The seller, Tutton CDJR, hereby expressly disclaims all warranties, either express or implied, including any implied warranty of merchantability or fitness for a particular purpose, and Ed Voyles neither assumes not authorizes any other person to assume for it any liability in connection with the sale of said products.

Terms Cash  Unless arrangements made  I hereby authorize the repair work hereinafter set forth to be done along with necessary material and agree that you are not responsible for loss or damage to vehicle or articles left in vehicle in case of fire, theft or any other cause beyond your control or for any delay caused by unavailability of parts or delays in parts shipments by the supplier or transporter. I hereby grant you and/or your employees permission to operate the vehicle herein described on streets, highways or else-where for the p

**All Sales are Final**

| | |
|---|---|
| Total Labor | 942.03 |
| Total Parts | 416.00 |
| Total Sublet | 0.00 |
| Misc. Chrgs | 69.99 |
| Car Rental | 0.00 |
| Freight | 0.00 |
| Deductible | 0.00 |
| Special Tax | 0.00 |
| Haz Mat Chrg | 0.00 |
| Sales Tax | 34.02 |
| **AMOUNT DUE** | **1,462.04** |

Header1
Header2
Header3

Cashier  CP
Receipt No. 23895
Trans No.: 0b90044d22

Date  8/16/2024 11:21:00 AM

Acct: **8973
CardType  VS
Transaction Type: CreditSale
Approval Code: 030380

Total: $729.29

    I AGREE TO PAY ABOVE
   TOTAL AMOUNT ACCORDING
   TO CARD ISSUER AGREEMENT

X_____

W0023307A

Thank You
For Shopping With Us.

Header1
Header2
Header3

Cashier: CP
Receipt No.: 23895
Trans No.: 4bd590363c

Date: 8/16/2024 11:16:34 AM

Acct: **6741
CardType: VS
Transaction Type: CreditSale
Approval Code: 001611

Total: $732.75

I AGREE TO PAY ABOVE
TOTAL AMOUNT ACCORDING
TO CARD ISSUER AGREEMENT

X _____

DAVID JOSEPH CERNANCE

Thank You
For Shopping With Us,

**EXHIBIT J**

CarMax Reimbursement Check ($629.29) and Related Payment Documentation.

Purpose:

- Demonstrates CarMax financially contributed after warranty denial.
- Supports knowledge of rust-related repair issues.

 **Affected by the government shutdown?**    ✕

We may be able to help. See details at chase.com/gov-shutdown



Printed from Chase Personal Online

## Deposit Details

Total: **$629.29**

Post date: Aug 29, 2024

Check #: 3000030867

Front    Back



Account number: 2079920004898

Routing number: 053101561

JPMorgan Chase Bank, N.A. Member FDIC        ©2025 JPMorgan Chase & Co        Equal Opportunity Lender

**EXHIBIT K**

Email Correspondence Concerning Plaintiff's Request for Affidavits/Declarations from Tim Arens and Daniell Richardson, including counsel's statement that depositions were a "necessary byproduct of electing to engage in litigation."

Purpose:

- Demonstrates refusal to provide clarification despite investigation claims.

 Gmail

## RE: Request for Discovery Conference – Cernance v. CarMax

**Sean E. Boyd** <sboyd@mfllaw.com>                                          Fri, Mar 20, 2026 at 3:30 PM
To: Pamela Wright <pamela_wright@gand.uscourts.gov>
Cc: David Cernance <davidcernance@gmail.com>, Maybel Thomas <mthomas@mfllaw.com>

Good afternoon, Ms. Wright – In response to plaintiff's discovery dispute email, we submit the following:

First, regarding the "clarification" that plaintiff purportedly seeks as to the alleged discovery response inconsistencies, he effectively wants either (1) CarMax's counsel to provide formal, on the record, supplemental discovery responses or (2) to serve additional interrogatory requests upon CarMax. To the extent plaintiff seeks the former, it is well understood that a party's counsel is not a proper source from whom an opposing party can obtain evidence in discovery, both because counsel does not have firsthand knowledge and/or any information counsel has necessarily would be protected by the attorney-client privilege or the work product doctrine. Rather, any such information should be sought from the party directly, either by way of written discovery or depositions. In fact, the parties have tentatively scheduled the deposition of CarMax's corporate representative for April 24, 2026, during which time plaintiff presumably could address these alleged "inconsistencies." As to the latter, plaintiff has already served more than the statutorily permitted written interrogatory requests and has not sought permission to serve any additional requests. Finally, upon information and belief, some of the information likely can be deduced from the documents that CarMax has already produced in discovery.

Second, with respect to plaintiff's request for sworn affidavits, he has not pointed to any statute or law that imposes an obligation upon a party to provide affidavits for non-parties. In actuality, plaintiff has simply repackaged his prior request that CarMax make available non-parties for depositions, which the Court has already rejected. Fundamentally, it also does not make sense to impose any such obligation upon a party because, as has been evidenced by the claimed discovery disputes thus far by plaintiff, there could be an endless loop of subsequent purported disputes based on the contention that the affidavit(s) provided are not sufficient, are deficient, do not contain the right information, etc. Instead, the discovery rules place the obligation upon plaintiff to determine the information he believes that he needs to proceed with his case, the sources from which to obtain that information, and the recognized discovery mechanisms by which to obtain them. To the extent that plaintiff may incur expenses in prosecuting his case to take depositions, that is an necessary byproduct of electing to engage in litigation, which both

parties have to endure.

Finally, plaintiff submitted a subsequent email on March 7, 2026, in which he also added that a purported dispute existed as to CarMax's failure to identify the individual who performed the May 21, 2024 inspection. The Court, however, previously addressed this during the last conference, so this position is moot.

If the Court should need anything else from us in advance of the hearing on March 26, 2026, please let us know.

Best,
Sean Boyd

Sean E. Boyd
Partner

Direct.678.298.0749
Tel.404.256.0700
Fax.404.250.9355
sboyd@mfllaw.com



MOZLEY | FINLAYSON | LOGGINS
——————— LLP ———————
SINCE 1977

NOTICE: This message originates from the law firm of Mozley, Finlayson & Loggins LLP. The message and any file transmitted with it may contain confidential information which may be subject to the attorney-client privilege, or otherwise protected against unauthorized use. The information contained in this message and any file transmitted with it is transmitted in this form based on a reasonable expectation of privacy consistent with ABA Formal Opinion No. 99-413. Any disclosure, distribution, copying or use of the information by anyone other than the intended recipient, regardless of address or routing, is strictly prohibited. All attachments are believed to be free of viruses, but any attachments should be checked for viruses before being opened. If you have received this message in error, please advise the sender by immediate reply and delete the original message. Personal messages express views solely of the sender and are not attributable to Mozley, Finlayson & Loggins LLP.

From: Pamela Wright <Pamela_Wright@gand.uscourts.gov>
Sent: 3/2/2026 3:03:17 PM
To: Sean E. Boyd <sboyd@MFLLaw.com>
CC: Maybel Thomas <mthomas@MFLLaw.com>;David Cernance <davidcernance@gmail.com>

BCC:

**Subject:** RE: Request for Discovery Conference – Cernance v. CarMax

Judge Jones will hear from the parties on March 26th at 10AM via telephone conference.

Mr. Boyd, please submit your response via email by March 20th.

Thank you.

Pamela Wright

Courtroom Deputy Clerk to

Honorable Steve C. Jones

404-215-1284

---

**From:** Sean E. Boyd <sboyd@MFLLaw.com>
**Sent:** Friday, February 27, 2026 2:48 PM
**To:** Pamela Wright <Pamela_Wright@gand.uscourts.gov>
**Cc:** Maybel Thomas <mthomas@MFLLaw.com>; David Cernance <davidcernance@gmail.com>
**Subject:** RE: Request for Discovery Conference – Cernance v. CarMax

**CAUTION - EXTERNAL:**

Good afternoon, Ms. Wright – We respectfully disagree with the plaintiff's position and would be happy to discuss in a conference with the Court or via email, which the Court prefers.

Best regards,
Sean Boyd

Sean E. Boyd
Partner

Direct.673.208.0749
Tel.404.256.0700
Fax.404.250.9355
sboyd@mfllaw.com



## MOZLEY | FINLAYSON | LOGGINS
— LLP —
SINCE 1977

NOTICE: This message originates from the law firm of Mozley, Finlayson & Loggins LLP. The message and any file transmitted with it may contain confidential information which may be subject to the attorney-client privilege, or otherwise protected against unauthorized use. The information contained in this message and any file transmitted with it is transmitted in this form based on a reasonable expectation of privacy consistent with ABA Formal Opinion No. 99-413. Any disclosure, distribution, copying or use of the information by anyone other than the intended recipient, regardless of address or routing, is strictly prohibited. All attachments are believed to be free of viruses, but any attachments should be checked for viruses before being opened. If you have received this message in error, please advise the sender by immediate reply and delete the original message. Personal messages express views solely of the sender and are not attributable to Mozley, Finlayson & Loggins LLP.

**From:** David Cernance <davidcernance@gmail.com>
**Sent:** Friday, February 27, 2026 8:59 AM
**To:** Pamela Wright <pamela_wright@gand.uscourts.gov>
**Cc:** Sean E. Boyd <sboyd@MFLLaw.com>; Maybel Thomas <mthomas@MFLLaw.com>
**Subject:** Request for Discovery Conference – Cernance v. CarMax

Dear Ms. Wright,

Pursuant to Judge Jones's instructions and Standing Order regarding discovery disputes, I respectfully request a discovery conference to address unresolved discovery issues.

On February 24, 2026, following the discovery conference held that morning, I sent good-faith requests to defense counsel pursuant to Federal Rule of Civil Procedure 37(a)(1). These requests sought clarification and supplementation of Defendant's sworn discovery responses concerning the alleged May 21, 2024 inspection of my vehicle.

First, I requested clarification regarding inconsistencies in Defendant's sworn discovery responses and prior statements, including Defendant's admission that no inspection report exists, its inability to identify the individual who performed the inspection, and its prior representations that an inspection and undercarriage evaluation occurred.

Second, in an effort to avoid unnecessary depositions and expense, I requested sworn declarations from the individuals Defendant identified as being on shift on May 21, 2024, as well as from the operations manager who

verified Defendant's interrogatory responses, stating whether they performed, supervised, or had knowledge of the alleged inspection. This request was made in good faith to narrow the issues and avoid unnecessary depositions. Defense counsel has not provided clarification, supplementation, or sworn declarations in response to these requests.

As a result, these discovery issues remain unresolved.

Because Judge Jones's Standing Order requires a discovery conference before filing any discovery motion, I respectfully request that the Court schedule a conference to address these outstanding issues.

Please let me know if the Court requires a joint discovery summary or any additional information.

Thank you for your time and assistance.

Sincerely,
David Joseph Cernance
Plaintiff, Pro Se
616 Hickory Cove Rd
Jasper, GA 30143
817-570-7097
davidecernance@gmail.com

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

**Sean E. Boyd**
Partner
Mozley, Finlayson & Loggins LLP



MOZLEY | FINLAYSON | LOGGINS
LLP
SINCE 1977

Direct 678.298.0749
Tel.404.256.0700
Fax 404.250.9355
sboyd@mfllaw.com
www.mfllaw.com

1050 Crown Pointe Parkway
Suite 1500
Atlanta, GA 30338

NOTICE: This message originates from the law firm of Mozley, Finlayson & Loggins LLP. The message and any file transmitted with it may contain confidential information which may be subject to the attorney-client privilege, or otherwise protected against unauthorized use. The information contained in this message and any file transmitted with it is transmitted in this form based on a reasonable expectation of privacy consistent with ABA Formal Opinion No. 99-413. Any disclosure, distribution, copying or use of the information by anyone other than the intended recipient, regardless of address or routing, is strictly prohibited. All attachments are believed to be free of viruses, but any attachments should be checked for viruses before being opened. If you have received this message in error, please advise the sender by immediate reply and delete the original message. Personal messages express views solely of the sender and are not attributable to Mozley, Finlayson & Loggins LLP.

**EXHIBIT L**

January 20, 2026 Email Request Seeking Identification and Deposition of the Employee Who Performed, Supervised, or Was Designated to Testify Regarding the Alleged May 21, 2024 Inspection.

Purpose:

- Demonstrates Plaintiff's early effort to identify the individual associated with the alleged May 21, 2024 inspection.
- Demonstrates Plaintiff's request for inspection-related records and witness identification before the federal discovery conferences.
- Demonstrates that Defendants were placed on notice of the inspector identification issue before later representations that the inspector could not be identified.
- Supports Plaintiff's position that the inspector-identification dispute predated the federal discovery conferences and remained unresolved.

 Gmail

**David Cernance <davidcernance@gmail.com>**

## Scheduling In-Person Deposition of CarMax Inspector + Document Request
2 messages

**David Cernance** <davidcernance@gmail.com>                          Tue, Jan 20 at 7:57 PM
To: Sean E. Boyd <sboyd@mfllaw.com>
Cc: Maybel Thomas <MTHOMAS@mfllaw.com>

**Mr. Boyd,**

Thank you for your email. I understand your comment regarding working through discovery; however, under the Federal Rules, depositions may be scheduled at any point during the discovery period, and the Inspector deposition has already been noticed. I am therefore moving forward with scheduling it now, and **I expect the deposition to occur within the next 30–45 days.**

I am ready to proceed with the in-person deposition of the CarMax employee who performed, supervised, or is designated to testify regarding the alleged May 21, 2024 inspection of my vehicle (the "Inspector"). Please provide **at least three available dates and times** for this in-person deposition within the next 30–45 days.

Please also confirm the following:

- The full physical address where the deposition will take place

- Any security or check-in requirements

In connection with this deposition, I request that CarMax produce the documents listed below **no later than seven days before the Inspector's deposition**, so I may review them in advance.

# Requested Documents for Inspector Deposition

• Any inspection checklist for May 21, 2024
• Any technician notes or findings from May 21, 2024
• Any documents reflecting the Inspector's training, certifications, qualifications, or authorization to perform vehicle inspections at CarMax
• Any photographs taken during the alleged May 21 inspection
• Any internal CarMax communications referencing a May 21 inspection
• Any service order, work order, or repair order associated with my vehicle on May 21
• Any technician assignment logs for May 21
• Any time-stamped entries showing when the vehicle was inspected
• Any mileage readings recorded on May 21
• Any documentation stating the vehicle "passed" an inspection on May 21
• Any documents the Inspector reviewed to prepare for testimony
• Any internal notes regarding rust concerns raised by me
• Any communications between CarMax employees regarding rust on this vehicle
• Any documents describing the rust as "cosmetic"
• Any documents describing the rust as "structural"
• Any documents used to determine the rust met CarMax standards
• Any internal notes regarding any return or replacement request
• Any documents referencing modification or branding as a basis for denying a return
• Any communications regarding the decision to deny a return
• Any documents showing when a return was denied
• Any documents showing the stated basis for the denial
• Any policies, procedures, or training materials the Inspector will rely on

Please advise if any of these documents do not exist or are being withheld, and on what basis.

Thank you,
David Cernance, M.Div., MMSc
616 Hickory Cove Road
Jasper, GA 30143-6859
817-570-7097 (Cell)

---

**David Cernance** <davidcernance@gmail.com>                    Mon, Jan 26 at 7:34 PM
To: <stump-brothers@hpeprint.com>

Sent from Gmail Mobile
[Quoted text hidden]

**EXHIBIT M**
Federal Motion to Compel Seeking Identification of Inspector and Inspection
Records.

Purpose:

- Shows issue was raised before remand.
- Demonstrates unresolved discovery dispute.

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

FILED IN CLERK'S OFFICE
U.S.D.C. - Gainesville

JAN 27 2026

KEVIN P. WEIMER, Clerk
By: _____ Deputy Clerk

DAVID JOSEPH CERNANCE,

    Plaintiff,

vs.

CARMAX AUTO SUPERSTORES, INC.,

    Defendant.

CIVIL ACTION FILE

NO.: 2:25-CV-00387-SCJ

## PLAINTIFF'S MOTION TO COMPEL DEPOSITION DATE AND DOCUMENT PRODUCTION

### INTRODUCTION

Plaintiff David Joseph Cernance respectfully moves the Court pursuant to Federal Rule of Civil Procedure 37(a) for an order compelling Defendant CarMax Auto Superstores, Inc. to provide a deposition date for the noticed deposition and to provide a complete list of documents responsive to Plaintiff's January 20, 2026 correspondence. Plaintiff further requests that Defendant be required to produce those documents no later than seven days before the scheduled deposition. Plaintiff has made repeated good-faith efforts to obtain this information, but Defendant has not responded, and Court intervention is now necessary.

### BACKGROUND

Plaintiff served a Notice of Deposition on January 17, 2026. On January 20, 2026, Plaintiff emailed Defendant's counsel requesting confirmation of the deposition date and requesting a list identifying each document, record, or item that Defendant intended to produce. Plaintiff did not request immediate production of the documents. Plaintiff sought only the list so that the scope of production could be confirmed, with the documents themselves to follow no later than seven days before the deposition.

Plaintiff followed up again on January 23, 2026, repeating the request for the deposition date and the document-identification list. On January 26, 2026, Plaintiff sent a final good-faith request seeking the same information. Defendant did not respond to any of these communications.

## RELEVANCE OF THE REQUESTED DISCOVERY

The requested discovery is central to the claims and defenses in this action. Plaintiff requested documents that should exist in the ordinary course of Defendant's business, including records identifying the individual who inspected the vehicle at issue, that individual's training, certifications, job duties, and authorization to perform the inspection, as well as documentation supporting the inspection and reinspection.

Defendant's Initial Disclosures did not identify the inspector or any individual with knowledge of the post-sale inspection or reinspection. Defendant disclosed two presale representatives and one operational witness. The operational

witness acknowledges post-sale interaction with Plaintiff but expressly denies presale involvement and provides no information regarding the inspection, the reinspection, or the statements made to Plaintiff during the return period. Defendant did not disclose this individual as a person with post-sale knowledge and did not identify him as the inspector or as the individual responsible for the post-sale inspection.

As a result, the identity of the inspector and the person responsible for the post-sale inspection remains unknown. The requested documents are necessary to determine who performed the inspection, what qualifications that individual possessed, and whether the inspection complied with Defendant's policies.

## NEED FOR COURT INTERVENTION

Without the requested materials, Plaintiff cannot prepare for the deposition or evaluate Defendant's defenses. Defendant's silence leaves Plaintiff unable to identify the proper witness, unable to confirm the basis for Defendant's representations, and unable to conduct discovery in an orderly manner. Federal Rule of Civil Procedure 37(a) authorizes a party to move for an order compelling discovery when the opposing party fails to respond. Rules 26 and 30 require cooperation in scheduling depositions and participation in discovery in good faith. Defendant's failure to provide a deposition date or confirm the list and production timeline for basic, relevant documents obstructs the progression of this litigation. Plaintiff has exhausted all reasonable efforts to resolve this matter without Court

involvement.

## RELIEF REQUESTED

Plaintiff respectfully requests that the Court order Defendant to provide a deposition date within seven days of the Court's order, to provide a complete list identifying each document responsive to Plaintiff's January 20, 2026 correspondence within the same seven-day period, and to produce the actual documents no later than seven days before the scheduled deposition date. Plaintiff further requests that Defendant be required to state in writing if any requested document does not exist, and requests any additional relief the Court deems appropriate under Rule 37.

## CERTIFICATION OF GOOD-FAITH EFFORT

Pursuant to Rule 37(a)(1), Plaintiff certifies that he attempted in good faith to obtain the deposition date and document information without Court action. Plaintiff requested this information on January 20, 2026, followed up on January 23, 2026, and sent a final good-faith request on January 26, 2026. Defendant did not respond.

Respectfully submitted,
This 27th day of January, 2026.

DAVID JOSEPH CERNANCE
Pro Se Plaintiff
616 Hickory Cove Rd
Jasper, GA 30143

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

DAVID JOSEPH CERNANCE,

      Plaintiff,

vs.

CARMAX AUTO SUPERSTORES, INC.,

      Defendant.

CIVIL ACTION FILE

NO.: 2:25-CV-00387-SCJ

## ORDER

Upon consideration of Plaintiff's Motion to Compel Deposition Date and

Document Production, and for good cause shown, the Motion is hereby

GRANTED.

It is ORDERED that within seven (7) days of the date of this Order,

Defendant shall provide Plaintiff with a deposition date for the noticed deposition.

It is further ORDERED that within the same seven (7) day period,

Defendant shall provide Plaintiff with a complete list identifying each document,

record, or item responsive to Plaintiff's January 20, 2026 correspondence.

It is further ORDERED that no later than seven (7) days before the

scheduled deposition, Defendant shall produce all documents identified on the list

Case 2:25-cv-00387-SCJ   Document 16-1   Filed 01/27/26   Page 2 of 2

referenced above.

If any requested document does not exist, Defendant shall state so in writing within the deadlines set forth in this Order.

SO ORDERED this ___ day of _____, 2026.

United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

DAVID JOSEPH CERNANCE,

Plaintiff,

vs.

CARMAX AUTO SUPERSTORES, INC.,

Defendant.

CIVIL ACTION FILE

NO.: 2:25-CV-00387-SCJ

## RULE 5.4(A) CERTIFICATE OF SERVICE

I certify that I have this day served a copy of Plaintiff's Motion to Compel

Deposition Date and Document Production, together with the accompanying

Proposed Order and this Rule 5.4 Certificate of Service, upon Defendant by

depositing a copy in the United States Mail with adequate postage affixed, sent by

certified mail to Defendant's counsel at their address of record, by sending a copy

via email to counsel at their email address of record.

Sean E. Boyd
MOZLEY, FINLAYSON & LOGGINS LLP
1050 Crown Pointe Parkway, Suite 1500
Atlanta, Georgia 30338-7704
sboyd@mfllaw.com

Pursuant to Local Rule 5.1, NDGa., the foregoing certificate is prepared in Times New Roman, 14 point.

This  27th day of January, 2026

DAVID JOSEPH CERNANCE
Pro Se Plaintiff
616 Hickory Cove Rd
Jasper, GA 30143
davidcernance@gmail.com

**EXHIBIT N**

Plaintiff's First Requests for Production of Documents to Defendant Letony "Tony" Rouse II (Instruction Page Identifying the Subject Vehicle by VIN and Defining the Scope of Requested Documents) (Pages 1–3).

Purpose:

- Documents Plaintiff's express definition of the "Subject Vehicle."
- Documents identification of the Subject Vehicle by VIN number.
- Documents the scope and instructions governing the discovery requests.
- Demonstrates that the Subject Vehicle was specifically identified in Plaintiff's discovery requests.
- Supports the inconsistency between Defendants' objections concerning vehicle identification and their subsequent responses addressing the Subject Vehicle.

IN THE SUPERIOR COURT OF PICKENS COUNTY
STATE OF GEORGIA

DAVID JOSEPH CERNANCE,

Plaintiff,

vs.

CARMAX AUTO SUPERSTORES, INC.,
LETONY "TONY" ROUSE II,

Defendants.

CIVIL ACTION FILE

NO.:  2025SUCV0721

## PLAINTIFF'S FIRST REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANT LETONY "TONY" ROUSE II

Pursuant to O.C.G.A. § 9-11-34, Plaintiff David Joseph Cernance requests that Defendant Letony "Tony" Rouse II produce the following documents within thirty (30) days.

## DEFINITIONS AND INSTRUCTIONS

**Subject Vehicle**

"Subject Vehicle" means the 2018 Ram 2500, VIN 3C6MR5AJ6JG347736.

**Documents, Electronically Stored Information, and System Entries**

The terms "document" and "documents" include all written, recorded, or electronically stored information in any form, including emails, text messages, internal messages, notes, photographs, videos, metadata, and attachments.

The term "system entry" includes any data, record, note, log, or information entered, stored, maintained, or generated within any electronic system, database, or platform.

All requests include both physical documents and system entries. A response stating that no documents exist is insufficient if responsive information exists in any electronic form.

If any document or system entry was created, modified, or supplemented using information obtained from any other document, communication, person, or source, Defendant shall produce all documents and communications from which such information was derived.

**Time Scope**

Unless otherwise specified, references include the stated period and any later-created materials reflecting those events.

**"Documents Sufficient to Show**

Means documents adequate to identify the existence, occurrence, participants, timing, findings, conclusions, or outcome of the matter referenced.

**Photographs**

Requests include all photographs regardless of source unless limited to those taken by Defendant.

Defendant may not satisfy requests for Defendant-taken photographs by producing only Plaintiff-provided images.

If none exist, Defendant must expressly state so.

**Continuing Obligation**

These requests are continuing and must be supplemented pursuant to O.C.G.A. § 9-11-26(e).

## REQUESTS FOR PRODUCTION

**INSPECTION DOCUMENTS**

Section Instructions:

"Inspection" includes acquisition, pre-sale, and post-sale inspections, including May 21 and May 23, 2024.

**INSPECTION DOCUMENTS**

**1.** Documents sufficient to show whether any inspection of the Subject Vehicle occurred in May 2024.

**2.** Documents sufficient to show whether any post-sale inspection occurred on or about May 21, 2024.

**3.** All inspection reports for any inspection conducted in May 2024.

**4.** All inspection checklists used or completed in May 2024.

**5.** All technician notes created during any inspection in May 2024.

**6.** Documents sufficient to show procedures actually applied during inspection.

**EXHIBIT O**

June 12, 2026 Discovery Responses of Defendant Letony "Tony" Rouse II
(Selected Responses, Pages 1–19)

Purpose:

- Documents Rouse's admission that he was a member of "senior management" at the Roswell location.
- Documents Rouse's identification of the individuals comprising "senior management."
- Documents Rouse's admissions concerning his personal involvement with the Subject Vehicle.
- Documents Rouse's admissions concerning his oversight of service and operations functions.
- Documents Rouse's admissions concerning Salesforce Case Notes relating to the Subject Vehicle.
- Supports the senior-management, inspector-identification, Salesforce, and personal-knowledge inconsistencies discussed in the motion.

IN THE SUPERIOR COURT OF PICKENS COUNTY
STATE OF GEORGIA

DAVID JOSEPH CERNANCE,

Plaintiff,

vs.

CARMAX AUTO SUPERSTORES, INC.
and LETONY "TONY" ROUSE II,

Defendants.

CIVIL ACTION FILE
NO. 2025SUCV0721

## RESPONSES OF DEFENDANT LETONY ROUSE II TO PLAINTIFF'S FIRST REQUESTS FOR PRODUCTION OF DOCUMENTS

COMES NOW defendant LETONY ROUSE ("Rouse") and, by and through his undersigned counsel, hereby responds to plaintiff's first requests for production of documents, as follows:

## GENERAL OBJECTIONS

NOTE A:   Rouse objects to the definitions and instructions set forth in plaintiff's first requests for production to the extent that same attempts to enlarge or expand upon the duties of discovery as defined by the Georgia Civil Practice Act.

NOTE B:   Rouse objects to plaintiff's first requests for production to the extent that they seek, without the requisite showing, information or documents that were prepared or obtained in anticipation of litigation, or which constitute work product, or which are protected by the attorney-client privilege or other privileges in this case.

NOTE C:   Rouse objects to plaintiff's first requests for production to the extent that they purport to require responses from, for, on behalf of, or relating to, any

Mozley, Finlayson
& Loggins LLP
A Limited Liability
Partnership
050 Crown Pointe Parkway
Suite 1500
Atlanta, Georgia 30338

person or entity other than Rouse.

NOTE D:    Rouse objects to identifying or producing confidential, proprietary, and competitively sensitive or trade secret materials or information without an appropriate protective order assuring the confidentiality of the documents and the information contained herein.

Subject to and without waiving these objections, Rouse responds to plaintiff's first requests for production, as follows:

1.

Documents sufficient to show whether any inspection of the Subject Vehicle occurred in May 2024.

**RESPONSE:**    Rouse is not personally in possession, custody, or control of any documents that are responsive to request for production no. 1.  To the extent responsive, please see the documents, if any, that CarMax Auto Superstores, Inc. ("CarMax") has produced in discovery.

2.

Documents sufficient to show whether any post-sale inspection occurred on or about May 21, 2024.

**RESPONSE:**    Rouse objects to request for production no. 2 on the grounds that it is vague and ambiguous since it does not identify the vehicle for which it seeks documents.  Subject to and without waiving these objections, to the extent that this request for production seeks documents related to the subject vehicle, Rouse is not personally in possession, custody, or control of any documents that are responsive to

Mozley, Finlayson
& Loggins LLP
A Limited Liability
Partnership
1050 Crown Pointe Parkway
Suite 1500
Atlanta, Georgia 30338

-2-

request for production no. 2. To the extent responsive, please see the documents, if any, that CarMax has produced in discovery.

3.

All inspection reports for any inspection conducted in May 2024.

**RESPONSE:** Rouse objects to request for production no. 3 on the grounds that it is vague and ambiguous, is overly broad in scope and time, and it seeks information that is irrelevant and is not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving these objections, to the extent that this request for production seeks reports related to the subject vehicle, Rouse is not personally in possession, custody, or control of any documents that are responsive to request for production no. 3. To the extent responsive, please see the documents, if any, that CarMax has produced in discovery.

4.

All inspection checklists used or completed in May 2024.

**RESPONSE:** Rouse objects to request for production no. 4 on the grounds that it is vague and ambiguous, is overly broad in scope and time, and it seeks information that is irrelevant and is not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving these objections, to the extent that this request for production seeks checklists related to the subject vehicle, Rouse is not personally in possession, custody, or control of any documents that are responsive to request for production no. 4. To the extent responsive, please see the documents, if any, that CarMax has produced in discovery.

Mozley, Finlayson
& Loggins LLP
A Limited Liability
Partnership
1050 Crown Pointe Parkway
Suite 1500
Atlanta, Georgia 30338

-3-

5.

All technician notes created during any inspection in May 2024.

**RESPONSE:**        Rouse objects to request for production no. 5 on the grounds that it is vague and ambiguous since it does not identify the vehicle for which it seeks notes, is overly broad in scope and time, and it seeks information that is irrelevant and is not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving these objections, to the extent that this request for production seeks notes related to the subject vehicle, Rouse is not personally in possession, custody, or control of any documents that are responsive to request for production no. 5. To the extent responsive, please see the documents, if any, that CarMax has produced in discovery.

6.

Documents sufficient to show procedures actually applied during inspection.

**RESPONSE:**        Rouse objects to request for production no. 6 on the grounds that it is vague and ambiguous in that it does not identify the "inspection" or vehicle for which it seeks a response, is overly broad in scope and time, and it seeks information that is irrelevant and is not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving these objections, to the extent that this request for production seeks documents related to the subject vehicle, Rouse is not personally in possession, custody, or control of any documents that are responsive to request for production no. 6. To the extent responsive, please see the documents, if any, that CarMax has produced in discovery.

Mozley, Finlayson
& Loggins LLP
A Limited Liability
Partnership
1050 Crown Pointe Parkway
Suite 1500
Atlanta, Georgia 30338

-4-

7.

Documents reflecting inspection of the undercarriage or frame.

**RESPONSE:** Rouse objects to request for production no. 7 on the grounds that it is vague and ambiguous since it does not identify the vehicle for which it seeks documents, is overly broad in scope and time, and it seeks information that is irrelevant and is not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving these objections, to the extent that this request for production seeks documents related to the subject vehicle, Rouse is not personally in possession, custody, or control of any documents that are responsive to request for production no. 7. To the extent responsive, please see the documents, if any, that CarMax has produced in discovery.

8.

Documents reflecting evaluation of rust or corrosion.

**RESPONSE:** Rouse objects to request for production no. 8 on the grounds that it is vague and ambiguous since it does not identify the vehicle for which it seeks documents, is overly broad in scope and time, and it seeks information that is irrelevant and is not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving these objections, to the extent that this request for production seeks documents related to the subject vehicle, Rouse is not personally in possession, custody, or control of any documents that are responsive to request for production no. 8. To the extent responsive, please see the documents, if any, that CarMax has produced in discovery.

Mozley, Finlayson
& Loggins LLP
A Limited Liability
Partnership
1050 Crown Pointe Parkway
Suite 1500
Atlanta, Georgia 30338

-5-

9.

Documents sufficient to show inspection findings or conclusions.

**RESPONSE:**    Rouse objects to request for production no. 9 on the grounds that it is vague and ambiguous since it does not identify the vehicle for which it seeks documents, is overly broad in scope and time, and it seeks information that is irrelevant and is not reasonably calculated to lead to the discovery of admissible evidence.  Subject to and without waiving these objections, to the extent that this request for production seeks documents related to the subject vehicle, Rouse is not personally in possession, custody, or control of any documents that are responsive to request for production no. 9.  To the extent responsive, please see the documents, if any, that CarMax has produced in discovery.

10.

Documents reflecting communication of inspection results.

**RESPONSE:**    Rouse objects to request for production no. 10 on the grounds that it is vague and ambiguous since it does not identify the vehicle for which it seeks documents, is overly broad in scope and time, and it seeks information that is irrelevant and is not reasonably calculated to lead to the discovery of admissible evidence.  Rouse further objects to this request for production to the extent that it seeks, without the requisite showing, information which constitutes work product, or which is protected by the attorney-client privilege or other privileges in this case.  Subject to and without waiving these objections, to the extent that this request for production seeks documents related to the subject vehicle, Rouse is not personally in

Mozley, Finlayson
& Loggins LLP
A Limited Liability
Partnership
1050 Crown Pointe Parkway
Suite 1500
Atlanta, Georgia 30338

-6-

possession, custody, or control of any documents that are responsive to request for production no. 10. To the extent responsive, please see the documents, if any, that CarMax has produced in discovery.

11.

Documents reflecting scheduling of any inspection.

**RESPONSE:**    Rouse objects to request for production no. 11 on the grounds that it is vague and ambiguous since it does not identify the vehicle for which it seeks documents, is overly broad in scope and time, and it seeks information that is irrelevant and is not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving these objections, to the extent that this request for production seeks documents related to the subject vehicle, Rouse is not personally in possession, custody, or control of any documents that are responsive to request for production no. 11. To the extent responsive, please see the documents, if any, that CarMax has produced in discovery.

12.

Documents reflecting assignment of inspection duties.

**RESPONSE:**    Rouse objects to request for production no. 12 on the grounds that it is vague and ambiguous, is overly broad in scope and time, and it seeks information that is irrelevant and is not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving these objections, to the extent that this request for production seeks documents related to the subject vehicle, Rouse is not personally in possession, custody, or control of any documents that are responsive

Mozley, Finlayson & Loggins LLP A Limited Liability Partnership 1050 Crown Pointe Parkway Suite 1500 Atlanta, Georgia 30338

-7-

to request for production no. 12. To the extent responsive, please see the documents, if any, that CarMax has produced in discovery.

13.

Logs or system records showing inspection activity.

**RESPONSE:**       Rouse objects to request for production no. 13 on the grounds that it is vague and ambiguous, is overly broad in scope and time, and it seeks information that is irrelevant and is not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving these objections, to the extent that this request for production seeks logs or records related to the subject vehicle, Rouse is not personally in possession, custody, or control of any documents that are responsive to request for production no. 13. To the extent responsive, please see the logs or records, if any, that CarMax has produced in discovery.

14.

Documents sufficient to show completion or non-completion of inspection.

**RESPONSE:**       Rouse objects to request for production no. 14 on the grounds that it is vague and ambiguous since it does not identify the vehicle for which it seeks documents, is overly broad in scope and time, and it seeks information that is irrelevant and is not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving these objections, to the extent that this request for production seeks documents related to the subject vehicle, Rouse is not personally in possession, custody, or control of any documents that are responsive to

Mozley, Finlayson
& Loggins LLP
A Limited Liability
Partnership
1050 Crown Pointe Parkway
Suite 1500
Atlanta, Georgia 30338

-8-

request for production no. 14. To the extent responsive, please see the documents, if any, that CarMax has produced in discovery.

15.

Documents sufficient to show the basis for identifying May 21 and May 23, 2024 as inspection dates.

**RESPONSE:**    Rouse objects to request for production no. 15 on the grounds that it is vague and ambiguous since it does not identify the vehicle for which it seeks documents, is overly broad in scope and time, and it seeks information that is irrelevant and is not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving these objections, to the extent that this request for production seeks documents related to the subject vehicle, Rouse is not personally in possession, custody, or control of any documents that are responsive to request for production no. 15. To the extent responsive, please see the documents, if any, that CarMax has produced in discovery.

16.

All photographs taken by Defendant during inspections.

**RESPONSE:**    Rouse objects to request for production no. 16 on the grounds that it is vague and ambiguous because it does not identify the "inspections" for which it seeks photographs, is overly broad in scope and time, and it seeks information that is irrelevant and is not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving these objections, to the extent that this request for production seeks photographs of the subject vehicle, Rouse did not

Mozley, Finlayson
& Loggins LLP
A Limited Liability
Partnership
1050 Crown Pointe Parkway
Suite 1500
Atlanta, Georgia 30338

-9-

take any photographs when he looked at that vehicle in May 2024, and, thus, he is not in possession, custody, or control of any photographs that are responsive to this request for production.

<div align="center">17.</div>

All videos taken by Defendant during inspections.

**RESPONSE:**      Rouse objects to request for production no. 17 on the grounds that it is vague and ambiguous because it does not identify the "inspections" for which it seeks videos, is overly broad in scope and time, and it seeks information that is irrelevant and is not reasonably calculated to lead to the discovery of admissible evidence.  Subject to and without waiving these objections, to the extent that this request for production seeks videos of the subject vehicle, Rouse did not take any videos when he looked at that vehicle in May 2024, and, thus, he is not in possession, custody, or control of any videos that are responsive to this request for production.

<div align="center">18.</div>

All photographs of the undercarriage.

**RESPONSE:**      Rouse objects to request for production no. 18 on the grounds that it is vague and ambiguous since it does not identify the vehicle for which it seeks photographs, is overly broad in scope and time, and it seeks information that is irrelevant and is not reasonably calculated to lead to the discovery of admissible evidence.  Subject to and without waiving these objections, to the extent that this request for production seeks photographs of the subject vehicle, Rouse is not personally in possession, custody, or control of any photographs that are responsive to

Mozley, Finlayson
& Loggins LLP
A Limited Liability
Partnership
1050 Crown Pointe Parkway
Suite 1500
Atlanta, Georgia 30338

<div align="center">-10-</div>

request for production no. 18. To the extent responsive, please see the photographs, if any, that CarMax has produced in discovery.

19.

All photographs showing rust or corrosion.

**RESPONSE:**    Rouse objects to request for production no. 19 on the grounds that it is vague and ambiguous since it does not identify the vehicle for which it seeks photographs, is overly broad in scope and time, and it seeks information that is irrelevant and is not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving these objections, to the extent that this request for production seeks photographs of the subject vehicle, Rouse is not personally in possession, custody, or control of any photographs that are responsive to request for production no. 19. To the extent responsive, please see the photographs, if any, that CarMax has produced in discovery.

20.

All photographs used in evaluating the vehicle.

**RESPONSE:**    Rouse objects to request for production no. 20 on the grounds that it is vague and ambiguous since it does not identify the "vehicle" for which it seeks photographs, is overly broad in scope and time, and it seeks information that is irrelevant and is not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving these objections, to the extent that this request for production seeks photographs of the subject vehicle, Rouse is not personally in possession, custody, or control of any photographs that are responsive to

Mozley, Finlayson
& Loggins LLP
A Limited Liability
Partnership
1050 Crown Pointe Parkway
Suite 1500
Atlanta, Georgia 30338

-11-

request for production no. 20. To the extent responsive, please see the photographs, if any, that CarMax has produced in discovery.

21.

All images stored in any CarMax system.

**RESPONSE:** Rouse objects to request for production no. 21 on the grounds that it is vague and ambiguous, is overly broad in scope and time, and it seeks information that is irrelevant and is not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving these objections, Rouse would defer to CarMax with respect to any images that it may or may not have stored in its system, which may be responsive to request for production no. 21.

22.

Documents sufficient to show whether photographs were deleted.

**RESPONSE:** Rouse objects to request for production no. 22 on the grounds that it is vague and ambiguous since it does not identify the vehicle for which it seeks documents about photographs, is overly broad in scope and time, and it seeks information that is irrelevant and is not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving these objections, to the extent that this request for production seeks document providing information about photographs of the subject vehicle, Rouse is not personally in possession, custody, or control of any documents that are responsive to request for production no. 22. To the extent responsive, please see the documents, if any, that CarMax has produced in discovery.

Mozley, Finlayson
& Loggins LLP
A Limited Liability
Partnership
1050 Crown Pointe Parkway
Suite 1500
Atlanta, Georgia 30338

-12-

23.

All metadata associated with photographs.

**RESPONSE:**   Rouse objects to request for production no. 23 on the grounds that it is vague and ambiguous since it does not identify the vehicle for which it seeks metadata about photographs, is overly broad in scope and time, and it seeks information that is irrelevant and is not reasonably calculated to lead to the discovery of admissible evidence.  Subject to and without waiving these objections, to the extent that this request for production seeks metadata associated with photographs of the subject vehicle, Rouse is not personally in possession, custody, or control of any metadata that is responsive to request for production no. 23.  To the extent responsive, please see the metadata, if any, that CarMax has produced in discovery.

24.

All imaging records relating to inspection activity.

**RESPONSE:**   Rouse objects to request for production no. 24 on the grounds that it is vague and ambiguous since it does not identify the vehicle for which it seeks records, is overly broad in scope and time, and it seeks information that is irrelevant and is not reasonably calculated to lead to the discovery of admissible evidence.  Subject to and without waiving these objections, to the extent that this request for production seeks imaging records related to the subject vehicle, Rouse is not personally in possession, custody, or control of any records that are responsive to request for production no. 24.  To the extent responsive, please see the records, if any, that CarMax has produced in discovery.

Mozley, Finlayson
& Loggins LLP
A Limited Liability
Partnership
1050 Crown Pointe Parkway
Suite 1500
Atlanta, Georgia 30338

-13-

25.

All visual documentation of vehicle condition.

**RESPONSE:**        Rouse objects to request for production no. 25 on the grounds that it is vague and ambiguous since it does not identify the vehicle for which is seeks documents, is overly broad in scope and time, and it seeks information that is irrelevant and is not reasonably calculated to lead to the discovery of admissible evidence.  Subject to and without waiving these objections, to the extent that this request for production seeks documents related to the subject vehicle, Rouse is not personally in possession, custody, or control of any documentation that is responsive to request for production no. 25.  To the extent responsive, please see the documents, if any, that CarMax has produced in discovery.

26.

Documents sufficient to identify individuals who performed inspections.

**RESPONSE:**        Rouse objects to request for production no. 26 on the grounds that it is vague and ambiguous because it does not identify the vehicle for which his seeks documents, is overly broad in scope and time, and it seeks information that is irrelevant and is not reasonably calculated to lead to the discovery of admissible evidence.  Subject to and without waiving these objections, to the extent that this request for production seeks documents related to the subject vehicle, Rouse is not personally in possession, custody, or control of any documentation that is responsive to request for production no. 26.  To the extent responsive, please see the documents, if any, that CarMax has produced in discovery.

Mozley, Finlayson
& Loggins LLP
A Limited Liability
Partnership
1050 Crown Pointe Parkway
Suite 1500
Atlanta, Georgia 30338

-14-

27.

Documents identify person present during any inspection.

**RESPONSE:**        Rouse objects to request for production no. 27 on the grounds that it is vague and ambiguous because it does not identify the vehicle for which his seeks documents, is overly broad in scope and time, and it seeks information that is irrelevant and is not reasonably calculated to lead to the discovery of admissible evidence.  Subject to and without waiving these objections, to the extent that this request for production seeks documents related to the subject vehicle, Rouse is not personally in possession, custody, or control of any documentation that is responsive to request for production no. 27.  To the extent responsive, please see the documents, if any, that CarMax has produced in discovery.

28.

Documents sufficient to show all technicians on duty on May 21 and May 23, 2024.

**RESPONSE:**        Rouse is not personally in possession, custody, or control of any documentation that is responsive to request for production no. 28, and he would defer to CarMax as to this request.

29.

Documents identifying all service department employees on those dates.

**RESPONSE:**        Rouse objects to request for production no. 29 on the grounds it seeks information that is irrelevant and is not reasonably calculated to lead to the discovery of admissible evidence.  Subject to and without waiving this objection,

Mozley, Finlayson
& Loggins LLP
A Limited Liability
Partnership
1050 Crown Pointe Parkway
Suite 1500
Atlanta, Georgia 30338

-15-

Rouse is not personally in possession, custody, or control of any documentation that is responsive to request for production no. 29, and he would defer to CarMax as to this request.

30.

Documents identifying supervisors on those dates.

**RESPONSE:** Rouse objects to request for production no. 30 on the grounds it seeks information that is irrelevant and is not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving this objection, Rouse is not personally in possession, custody, or control of any documents that are responsive to request for production no. 30, and he would defer to CarMax as to this request.

31.

Documents identifying "senior management."

**RESPONSE:** Rouse objects to request for production no. 31 on the grounds that it is overly broad in scope since it does not identify the location for which such information is sought, and it seeks information that is irrelevant and is not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving these objections, Rouse is not personally in possession, custody, or control of any documents that are responsive to request for production no. 31, and he would defer to CarMax as to this request.

32.

Documents identifying individuals included within "senior management."

Mozley, Finlayson
& Loggins LLP
A Limited Liability
Partnership
1050 Crown Pointe Parkway
Suite 1500
Atlanta, Georgia 30338

-16-

**RESPONSE:**     Rouse objects to request for production no. 32 on the grounds that it is overly broad in scope since it does not identify the location for which such information is sought, and it seeks information that is irrelevant and is not reasonably calculated to lead to the discovery of admissible evidence.  Subject to and without waiving these objections, Rouse is not personally in possession, custody, or control of any documents that are responsive to request for production no. 32, and he would defer to CarMax as to this request.

<div align="center">33.</div>

Shift schedules for May 21 and May 23, 2024.

**RESPONSE:**     Rouse objects to request for production no. 33 on the grounds that it is overly broad in scope since it does not identify the location for which such information is sought, and it seeks information that is irrelevant and is not reasonably calculated to lead to the discovery of admissible evidence.  Subject to and without waiving these objections, Rouse is not personally in possession, custody, or control of any documents that are responsive to request for production no. 33, and he would defer to CarMax as to this request.

<div align="center">34.</div>

Time records for employees on those dates.

**RESPONSE:**     Rouse objects to request for production no. 34 on the grounds that it is overly broad in scope since it does not identify the location for which such information is sought, and it seeks information that is irrelevant and is not reasonably calculated to lead to the discovery of admissible evidence.  Subject to and

Mozley, Finlayson
& Loggins LLP
A Limited Liability
Partnership
1050 Crown Pointe Parkway
Suite 1500
Atlanta, Georgia 30338

-17-

without waiving these objections, Rouse is not personally in possession, custody, or control of any documents that are responsive to request for production no. 34, and he would defer to CarMax as to this request.

35.

Organizational charts for May 2024.

**RESPONSE:** Rouse objects to request for production no. 35 on the grounds that it is overly broad in scope, and it seeks information that is irrelevant and is not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving these objections, Rouse is not personally in possession, custody, or control of any documents that are responsive to request for production no. 35, and he would defer to CarMax as to this request.

36.

Communications between Defendant and CarMax employees regarding the subject vehicle.

**RESPONSE:** Rouse objects to request for production no. 36 on the grounds that it is overly broad in time and scope, and it seeks information that is irrelevant and is not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving these objections, Rouse is not personally in possession, custody, or control of any communications that are responsive to request for production no. 36. To the extent responsive, please see the documents that CarMax has produced in discovery.

Mozley, Finlayson
& Loggins LLP
A Limited Liability
Partnership
1050 Crown Pointe Parkway
Suite 1500
Atlanta, Georgia 30338

-18-

37.

Communications regarding inspections.

**RESPONSE:**        Rouse objects to request for production no. 37 on the grounds that it is vague and ambiguous, is overly broad in time and scope, and it seeks information that is irrelevant and is not reasonably calculated to lead to the discovery of admissible evidence. Rouse further objects to this request for production to the extent that it seeks, without the requisite showing, communications that were prepared or obtained in anticipation of litigation, or which constitute work product, or which are protected by the attorney-client privilege or other privileges in this case. Subject to and without waiving these objections, to the extent that this request for production seeks communications about the subject vehicle, Rouse is not personally in possession, custody, or control of any communications that are responsive to request for production no. 37. To the extent responsive, please see the documents that CarMax has produced in discovery.

38.

Communications regarding rust or corrosion.

**RESPONSE:**        Rouse objects to request for production no. 38 on the grounds that it is vague and ambiguous, is overly broad in time and scope, and it seeks information that is irrelevant and is not reasonably calculated to lead to the discovery of admissible evidence. Rouse further objects to this request for production to the extent that it seeks, without the requisite showing, communications that were prepared or obtained in anticipation of litigation, or which constitute work product, or which are

Mozley, Finlayson
& Loggins LLP
A Limited Liability
Partnership
1050 Crown Pointe Parkway
Suite 1500
Atlanta, Georgia 30338

-19-

IN THE SUPERIOR COURT OF PICKENS COUNTY
STATE OF GEORGIA

DAVID JOSEPH CERNANCE,

Plaintiff,

vs.

CARMAX AUTO SUPERSTORES, INC.,
LETONY "TONY" ROUSE II,

Defendants.

CIVIL ACTION FILE

NO.: 2025SUCV0721

## PROPOSED ORDER ON PLAINTIFF'S MOTION FOR SANCTIONS FOR FRAUD ON THE COURT

Plaintiff's Motion for Sanctions for Fraud on the Court having come before the Court for consideration, and the Court having reviewed the motion, the record, and all matters properly before the Court, it is hereby **ORDERED**:

☐ **The Motion is GRANTED.**

☐ **The Motion is DENIED.**

☐ **The Motion is GRANTED IN PART and DENIED IN PART.**

If the Motion is granted in whole or in part, the Court further ORDERS:

_____

_____

_____

_____
_____

SO ORDERED this ___ day of _____, 2026.


**Judge, Superior Court of Pickens County**



IN THE SUPERIOR COURT OF PICKENS COUNTY
STATE OF GEORGIA

DAVID JOSEPH CERNANCE,

Plaintiff,

vs.

CARMAX AUTO SUPERSTORES, INC.,
LETONY "TONY" ROUSE II,

Defendants.

CIVIL ACTION FILE

NO.: 2025SUCV0721

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served a true and correct copy of **Plaintiff's Motion for Sanctions for Fraud on the Court** upon counsel of record for Defendants by electronic mail and by depositing a copy in the United States Mail, first-class postage prepaid, in a properly addressed envelope to the following:

Sean E. Boyd
MOZLEY, FINLAYSON & LOGGINS LLP
1050 Crown Pointe Parkway, Suite 1500
Atlanta, Georgia 30338-7704
sboyd@mfllaw.com

This 15th day of June, 2026

DAVID JOSEPH CERNANCE
Pro Se Plaintiff
616 Hickory Cove Rd
Jasper, GA 30143-6859
davidcernance@gmail.com